THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANDRE BOULRECE, Defendant-Appellant.

First District (6th Division)   No. 1—87—0394

Opinion filed March 16, 1990.

Randolph N. Stone, Public Defender, of Chicago (Paul D. Bellendir, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

After a jury trial, defendant, Andre Boulrece, was found guilty of the murder, armed robbery and robbery of Elio Evangelista, and of the robbery of Gavino Miguel. He was found not guilty of the aggravated battery of Miguel. The trial court sentenced defendant to concurrent terms of 30 years' imprisonment for murder, 15 years for armed robbery, and 7 years for each of the two robbery convictions. On appeal, defendant contends that the language contained in the voluntary manslaughter instruction was improper; that a police officer was erroneously permitted to testify as to Miguel's out-of-court identification of defendant when the victim could not make an in-court identification; that an unfair trial resulted from testimony about an anonymous unidentified declarant; that evidence of gang involvement was prejudicial and irrelevant; that defendant was erroneously precluded from inquiring into the illegal alien status of the State's eyewitnesses; that defendant was improperly convicted of the lesser offense of robbery; and that the trial court erred in denying defendant's motion to quash his arrest.

Miguel and his cousin, Carlos China, testified that on August 15, 1985, they were walking on North Avenue in Chicago with Evangelista. At 10:30 p.m., they were approached by a group of six young men, including defendant and a man named Jose Padilla. The six men attacked Evangelista, Miguel and China. Evangelista died that night as the result of the attack.

Miguel's watch was taken by someone with a knife, who later was identified as defendant. Miguel was knocked unconscious with a baseball bat. At trial, Miguel was unable to identify defendant. China fought with Padilla.

Officer Joseph Sparks testified that at 11:20 p.m. on that night, he and Officer Joseph Fallon, accompanied by Officer Maddux of the Los Angeles police department, were on patrol and saw two men running down an alley. They stopped and asked the men why they were running. Defendant stated that they had been in a fight with some Mexicans near Grand and Cicero, and that the Mexicans were chasing them. Sparks conducted a pat-down search of defendant, and asked for and received identification from him. The officers permitted the two men to leave.

The officers left, and 1½ blocks away they saw Evangelista in an alley, crawling on his hands and knees, with puncture wounds in his

stomach. For the limited purpose of showing the basis for further investigation, Sparks was allowed to testify that a passerby informed his partner that he had seen the victim in the alley fighting with a black man and a Spanish man.

Forty-five minutes later, the officers found defendant and Padilla on the street. They were arrested. Defendant told the police that he had been carrying a knife. He led them to a building where a bloody knife was found under a porch. Defendant wore a watch which he admitted taking from a Mexican during a fight. Miguel later identified it as his watch. Defendant carried $107 in his wallet, and the bills were bloodstained. He also carried some Mexican currency. Defendant admitted taking the money from a Mexican on North Avenue. Officer Fallon testified that during the search for defendant, Officer Maddux mentioned that he had noticed a knife in defendant's pocket during the first stop.

At the police station, defendant stated that he and Padilla fought with three Mexicans. Defendant took a watch from one man and money from another. One victim chased them. When defendant got tired, he turned and began stabbing the man. He and Padilla threw the victim to the ground and kicked him in the head. They then went through his pockets and took some more money. They ran until they were stopped by the police. Defendant later made a written statement which was essentially the same as his earlier oral statement to the police.

Defendant called no witnesses at trial.

Defendant initially contends that the voluntary manslaughter instructions to the jury erroneously stated the burdens of proof on the issue of whether defendant acted under the unreasonable belief that his actions were justified (see *People v. Reddick* (1988), 123 Ill. 2d 184, 526 N.E.2d 141), and that the voluntary manslaughter instructions did not inform the jury that the State had the burden to prove the absence of legal justification.

However, the jury found defendant guilty of murdering the victim in the course of an armed robbery. Under the applicable statute, it would be impossible for a defendant committing murder while "attempting to commit, committing, or escaping after the commission of, a forcible felony" to be guilty of voluntary manslaughter. (Ill. Rev. Stat. 1985, ch. 38, pars. 2—8, 7—4(a), 9—1(a)(3); see also *People v. Moore* (1983), 95 Ill. 2d 404, 447 N.E.2d 1327.) Thus, there is no issue of manslaughter in this case, and no error in the manslaughter instructions would require reversal. See *People v. Austin* (1989), 133 Ill. 2d 118; *People v. Daniel* (1989), 191 Ill. App. 3d 837, 548 N.E.2d 354;

*People v. Beacham* (1989), 189 Ill. App. 3d 483, 545 N.E.2d 392; *People v. Skipper* (1988), 177 Ill. App. 3d 684, 532 N.E.2d 44; *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531.

We find no merit in defendant's next contention that he was denied due process when a police officer was permitted to testify as to Miguel's identification of defendant in a lineup, when Miguel was unable to make an in-court identification. Identification was not an issue in this case, where defense counsel conceded in opening statement that defendant stabbed Evangelista and defendant repeatedly confessed to the stabbing. See *People v. Curtis* (1986), 113 Ill. 2d 136, 497 N.E.2d 1004; *People v. Spicer* (1987), 163 Ill. App. 3d 81, 516 N.E.2d 491.

Defendant also contends that he was denied a fair trial when a police officer testified that an anonymous unidentified passerby stated he saw the victim fighting with a black man and a Spanish man, and when the State made this point in closing arguments.

No error occurred where the court properly limited this hearsay testimony to the purpose of explaining the actions of the police during their investigation of the crime. (See *People v. Leverston* (1985), 132 Ill. App. 3d 16, 476 N.E.2d 1344; *People v. Young* (1983), 115 Ill. App. 3d 455, 450 N.E.2d 947.) This is true even where the content of the conversation is admitted for this narrow purpose. Moreover, evidence of a hearsay statement made to a police officer will not affect the validity of a conviction where the evidence could not have changed the outcome of the trial (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537). Here, the evidence that defendant stabbed Evangelista was overwhelming. We also note that during closing argument, the prosecutor made only a brief reference to the officer's testimony and that comment was in response to defense counsel's comments. No reversible error occurred.

Defendant contends further that he was denied a fair trial when the State violated the court's order by eliciting irrelevant and prejudicial evidence of gang involvement. Defendant's argument is unpersuasive. Both Officers Sparks and Fallon testified that their position was "Gang Crimes Specialist." There was no evidence indicating defendant was involved in a gang, or that the stabbing and robbery involved gang activity. The jury was made aware that Sparks and Fallon came across defendant only coincidentally, and there was no indication that the officers were investigating any gang activity when they happened to see defendant running down the alley while they were on routine patrol. No error occurred when the officers were permitted to testify as to their position in the police department.

■ Defendant contends that he was denied a fair trial when he was not permitted to inquire into the illegal alien status of Miguel and China. There were no deportation proceedings pending against these witnesses, and there was no suggestion that they had been offered leniency on a charge of illegal entry, which would have been beyond the power of the State's Attorney. Furthermore, evidence of commission of prior criminal acts may not be used to impeach a witness unless there has been a conviction for that crime. Defendant had no right to impeach the witnesses on this point. See *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585, 363 N.E.2d 805; *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 408 N.E.2d 23.

■ Defendant also contends he was improperly convicted of the lesser included offense of the robbery of Evangelista, where it arose out of the same occurrence as the armed robbery, and he requests a new sentencing hearing. Where there are separate acts there can be separate convictions. (*People v. Del Percio* (1985), 105 Ill. 2d 372, 475 N.E.2d 528.) During the initial robbery on North Avenue, defendant took $107 from Evangelista. Later, three blocks away, during the armed robbery involving the stabbing, defendant took Mexican currency from Evangelista. Separate acts supported the separate convictions here.

In a supplemental brief, defendant contends that the trial court erred when it denied defendant's motion to quash the arrest. We agree with the trial court's finding that there were two separate incidents here—the initial stop in the alley and the later arrest. There is a difference between arresting a person and stopping the person for questioning. (See *People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605.) Defendant maintains that the initial stop of defendant and Padilla was improper because running down an alley violates no law. The trial court, however, found the stop was proper and that the officers "would be dilatory in their duties had they not stopped these individuals." It concluded that the officers had a reasonable basis for making the minimal intrusion.

In *People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688, defendant was stopped when police officers saw him carrying a brown bag at 10:30 p.m., and suddenly darting into an alley when the squad car came within 10 or 20 feet of him. The police exited the squad car with their guns drawn and followed defendant. They found him standing in an alley and ordered him to turn around. The court held that, while there was no question that defendant's sudden running into the alley was not a crime, it was certainly unusual. From the officers' viewpoint, such conduct at 10:30 p.m. was at least reasonably suspi-

cious enough to justify an inquiry into his sudden flight. The police in *Tribett* were properly investigating the suspicious behavior.

■ Similarly, in the present case, the police were on routine patrol at 11:30 p.m. in a high crime area. They saw defendant and Padilla running toward them. No other people were in the alley. The officers stopped the car and got out. By this time, defendant and Padilla had already stopped right in front of the police car. The police had not asked the men to stop or to approach the car. When Sparks asked defendant why he was running, defendant replied that they just had been in a fight and were being chased.

Sparks also asked defendant his name, and defendant showed him a green card with his name on it. Sparks patted down defendant to determine whether he had any weapons, as standard procedure to protect himself. It was a cursory touching of defendant's sides and legs, and Sparks felt no weapon. He does not recall whether he felt defendant's back pocket. After about two minutes, the officers did not detain defendant and Padilla any longer. Neither defendant nor Padilla had refused to answer any of the officers' questions.

■ The trial court could find, from the officers' viewpoint, it was reasonable to stop the two men and ask why they were running down the alley that night. Innocent behavior can provide the basis for a reasonable suspicion inquiry, since in making a determination of whether a suspicion exists, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts. (*United States v. Sokolow* (1989), 490 U.S. 1, 10, 104 L. Ed. 2d 1, 12, 109 S. Ct. 1581, 1587, citing *Illinois v. Gates* (1983), 462 U.S. 213, 243 n.13, 76 L. Ed. 2d 527, 552 n.13, 103 S. Ct. 2317, 2335 n.13.) Here, it was reasonable for the officers to attach the requisite level of suspicion to the noncriminal acts of defendant. The initial stop was proper. The cursory pat down was a minimal intrusion justified by defendant's own admission that he had just been in a fight.

■ Turning to whether there was probable cause for the arrest of defendant, the trial court had before it the information that at that time the police officers knew a crime had been committed. They had seen the victim crawling in the alley. His shirt was bloodstained, and he had a large abdominal wound. An eyewitness indicated to the police that a black male and an Hispanic male had been fighting with the victim. Just minutes earlier, the police officers had stopped defendant and his Hispanic companion running down a nearby alley, admittedly running away from a fight.

■ Probable cause exists in the objective sense if the circum-

stances known by the arresting officer are sufficient to warrant a person of reasonable caution in believing that an offense has been committed by the person arrested. (*People v. Moody* (1983), 94 Ill. 2d 1, 445 N.E.2d 275.) In the present case, there was clearly sufficient evidence to support a finding of probable cause to arrest defendant. The trial court properly denied defendant's motion to quash his arrest and suppress the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.