THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM BURESS, Defendant-Appellant.

First District (2nd Division)   No. 1—92—3062

Opinion filed February 22, 1994.

218

Rita A. Fry, Public Defender, of Chicago (Todd Avery Shanker and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

In the early morning of January 8, 1992, Chicago police officer Tim Thompson and his partner, Officer John Walsh, responded to a radio call which instructed them to investigate a suspected burglary at 1551 West Howard Street, on the city's far north side. Upon entering the east end of an alley behind the address they had been given, Thompson heard the wail of an alarm and noticed other squad cars converge on the scene from the west. After parking their vehicle so that it blocked the north end of the alley, Thompson and Walsh alighted from the car and walked into the alley. As they turned a corner, they came upon defendant, who was bent over, near a garbage dumpster, rapidly gathering together coins which were strewn about the alley, and filling his pockets with the change. Thompson also observed a cash register perched on the dumpster with its cord hanging directly in front of defendant, and its cash drawer was lying next to it.

After Thompson asked him why he was in the alley, defendant stood up and attempted to walk around the two policemen. They subdued him, asked for his name and reinquired as to what he was doing there. He responded by informing them that his name was James McCool, and that he was just collecting the coins on the ground. While Thompson stayed with his detainee, Walsh went around to the front of the building, and upon his return, he told Thompson that the front window of the building, which housed a retail establishment, had been broken and the store's cash register was missing. Walsh also related that a trail of coins led from the broken window directly to the dumpster where they had found defendant. Thompson then arrested defendant and, pursuant thereto, conducted a custodial search, which uncovered a large amount of coins, paper currency, some personal belongings, and a set of four small keys which were on a ring with a plastic red apple fob. Although he conducted a thorough search, Thompson did not come across any shards or even particles of glass adhering to defendant's clothing during the pat-down of defendant.

Officer Walsh agreed with Thompson that as they drove up to the location, he heard an alarm. Other than defendant, he saw no individuals near the location of the crime, and he saw no vehicles depart from the area. Once his partner had gained control of defendant, Walsh investigated the front of the building. He saw a storefront with its glass door broken inward, and learned from other officers at the scene that the store was missing a cash register, and that the door had apparently been broken by a tire iron which was found on the store's vestibule floor.

Officer Kathleen Gahagen was the police technician assigned to gather evidence at the scene of the break-in. Beginning at the shattered front door of the establishment, she observed a trail of coins, leading her into the nearby alley and which ultimately led to a dumpster wherein she saw parts of a cash register. She stated that after inspecting the register for fingerprints, she discovered that it contained prints, but she could take no "lifts" with which she could conduct a comparison with prints on file.

The store which was broken into was DollarBuster's, a retail establishment which sold general merchandise and which was operated by Ahmed Diab. He testified that the store closed at 8 p.m. and after closing, his general practice was to leave some money in the register in order to facilitate the opening of business the following morning. His store was equipped with an electronic alarm which, when set off, sounds a siren and simultaneously informs the police of the break-in via phone lines. He denied selling tire irons similar to the one which was found lying on the floor of his store on the morning of the crime, and stated that he never gave defendant the authority to exercise control over the money in the cash register or over the cash register itself. Finally, he identified the keys and the apple fob found on defendant as being the ones which control the registers in his store.

Defendant testified that at approximately 4 a.m. on January 8, 1992, he was walking west on Howard Avenue heading toward the rapid transit station on Howard, when immediately east of Ashland Avenue he saw coins on the ground glinting in the light of the street lamps as well as in the occasional beam of a passing car. He picked up the coins as he came across them, and while so engaged, he noticed that the coins led into the alley, where there appeared to be many more. He went to the end of the trail, raked the coins together into a pile, and filled his pockets with them. Looking up, he saw a cash register next to a light pole in the alley; he kicked and shook the register and heard the jangling of coins. He then lifted the register, placed it on a nearby garbage dumpster, and removed its contents.

As he was readying to leave, a police car pulled up and its headlights illuminated still more change, which he stooped to pick up. An officer exited the vehicle, identified himself, and conversed with defendant, asking him what he was doing. He replied that he was gathering the coins which were all over the alley. The officer then handcuffed him and inspected his pockets, removing their contents. Although he denied that the small keys introduced by the State were among the articles removed, he did say that he had other keys in his pockets which had been inadvertently pocketed while he

collected the coins. Finally, he denied breaking into DollarBusters and denied ever using the tire iron found there.

In order to impeach defendant's testimony, the State sought to read into evidence a copy of his prior conviction for robbery. Defendant objected to this, urging the court to omit reference to the particular crime and to advise the jury only that he had previously committed a felony. He also asked that the State be obligated to inform the jury that he had pleaded guilty to the offense. The court refused both requests and directed the State to keep the prove up in the neutral form of defendant's prior conviction for robbery. When the assistant State's Attorney was reading the conviction to the jury, however, she added that defendant was initially charged with armed robbery and was sentenced to 180 days' imprisonment.

Defendant immediately objected and immediately thereafter sought a mistrial, arguing that he was prejudiced by the information offered which was in excess of that allowed to impeach a witness' credibility. His motion for a mistrial was denied, but the court did admonish the jury to disregard the incompetent evidence.

Although the information charged him only with burglary, defendant also tendered verdict forms for theft, maintaining that it was a lesser included offense of burglary. The court declined to allow the jury to find him guilty of that crime. The jury thereafter found defendant guilty as charged.

At the sentencing hearing, the State invoked section 5—5—3(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)) to elevate defendant's Class 2 felony to Class X sentencing. Defendant stipulated that given his two most recent felonies, he was eligible for the enhanced sentence. After reciting factors in mitigation, the court sentenced defendant to 14 years in prison based on his extensive criminal past. Defendant appeals both his conviction and sentence.

## I

Defendant first maintains that the trial court erred when it refused to require the State, while impeaching his testimony with a prior conviction for robbery, to advise the jury as well that he had pleaded guilty to that offense. The circuit court posited that how an individual was convicted was irrelevant to the believability of his testimony. According to the court, all that mattered was that he was actually convicted. Based on this belief, it did not obligate the State to inform the jury of defendant's earlier admission of guilt as a precondition to telling the jurors that he had been convicted of robbery.

In *People v. Ridley* (1975), 25 Ill. App. 3d 596, 323 N.E.2d 577, this court held that where the State intends to impeach the testimony of a defendant via a prior conviction, the defendant should be allowed to show that the prior conviction was the product of his guilty plea, and did not result from a trial and a finding of guilt. The *Ridley* court reasoned that apprising the fact finder of the defendant's admission of guilt would enable him to argue that the earlier conviction should have no bearing on his credibility because when he was guilty in the past, he, in all honesty, accepted responsibility for his crimes. See *People v. Taylor* (1979), 68 Ill. App. 3d 680, 686, 386 N.E.2d 159, 163 ("We also note that an accused should be permitted *** to show that he entered a plea of guilty to the offense").

Although the rule originally announced in *Ridley* continues to be followed by our courts, the decisions subsequent to that case have recognized that, in most instances, a violation of *Ridley* cannot be considered to have played a meaningful role in the defendant's conviction. In *People v. Johnson* (1988), 173 Ill. App. 3d 998, 527 N.E.2d 1317, after holding that the defendant should have been permitted to advise the jury that his earlier convictions were pursuant to guilty pleas and that he should also have been allowed to argue that in the past when he was in fact guilty, he admitted it, the court nevertheless refused to set aside the conviction of a defendant who was prohibited from doing either.

The court based its decision on the observation that, due to the wide usage of plea bargaining and the fact that a defendant's admission of guilt may have been due more to his recognition of the overwhelming evidence against him rather than any innate forthrightness or honesty, it was doubtful that the jury, if apprised of the earlier plea, would have found the defendant any more believable. The *Johnson* court therefore deemed the trial court's error harmless. See *People v. Reppa* (1982), 104 Ill. App. 3d 1123, 1128, 433 N.E.2d 1091, 1097 ("[W]hile it may have been error for the court to have prevented defendant from informing the jury of the guilty pleas, this error does not require reversal of defendant's conviction[ because this] *** testimony *** could not have so bolstered his credibility that the outcome of this trial would have been different had this testimony been allowed").

■ The *Johnson* court's observations concerning the relative probative value of confessions of guilt surely apply to this case as well. Based on its verdict, the jury could not have believed defendant when he testified that he only happened to come upon the coins. It is doubtful that this story would have become any more convincing had the jury known that defendant's earlier conviction was the product of

his admission of guilt. Thus, the court's refusal to so apprise the jury, although error, was harmless and does not warrant reversal of its judgment.

## II

Next, defendant claims that a mistrial should have been called because the State, while impeaching his credibility with a prior conviction, read to the jury the fact that he was charged with armed robbery and, after being convicted of the lesser offense of robbery, was sentenced to 180 days' incarceration. The State initially responds by raising the completely untenable argument that *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, wherein our supreme court reexamined and allowed the use of prior convictions to discredit a witness' testimony, does not limit the impeaching evidence to prior convictions alone. Thus, the State's unstated suggestion is that defendant's earlier charge and sentence should be considered competent to impeach his testimony in addition to the proof of his robbery conviction.

*Montgomery* held that the credibility of a witness is assailable by "evidence that he has been *convicted of a crime.*" (Emphasis added.) (*Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.) Although the court did not expressly state that convictions are the only prior "bad acts" with which the State may impeach the credibility of a defendant's testimony in a criminal trial, that is the unmistakable import of that decision. Moreover, every decision which has followed *Montgomery* and which has addressed this issue has specifically and unequivocally stated that "[a] witness may be impeached by attacking his character, *but only convictions may be proved for this purpose*; proof of arrests, indictments, charges or actual commission of crime are not admissible." (Emphasis added.) (*People v. Lucas* (1992), 151 Ill. 2d 461, 491, 603 N.E.2d 460, 474; accord *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9; *People v. Little* (1991), 223 Ill. App. 3d 264, 585 N.E.2d 148; *People v. Johnson* (1990), 206 Ill. App. 3d 318, 564 N.E.2d 232; *People v. Boulrece* (1990), 195 Ill. App. 3d 666, 552 N.E.2d 1166; *People v. Halcomb* (1988), 176 Ill. App. 3d 100, 530 N.E.2d 1074; *People v. Charleston* (1985), 132 Ill. App. 3d 769, 477 N.E.2d 762; see also *People v. Flynn* (1956), 8 Ill. 2d 116, 133 N.E.2d 257 (a pre-*Montgomery* decision which nonetheless held that a defendant's credibility may be impeached by evidence of the defendant's prior convictions only).) Under this uninterrupted body of precedents, the State's argument is indefensible and therefore appropriately ignored by this court.

■ Accordingly, we next consider whether the trial court erred when, after the State breached the constraints on impeachment

imposed by *Montgomery,* it refused to declare a mistrial. The propriety of declaring a mistrial is within the discretion of the circuit court. (*People v. Redd* (1990), 135 Ill. 2d 252, 323, 553 N.E.2d 316, 348, citing *People v. Hall* (1986), 114 Ill. 2d 376, 405, 499 N.E.2d 1335, 1346; see also *People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.) In order to inform the circuit court in its decision-making in this regard, our supreme court has counselled that "[a] mistrial should generally be declared only as the result of some occurrence at trial of such character and magnitude that the party seeking it is deprived of his right to a fair trial." (*Redd,* 135 Ill. 2d at 323, 553 N.E.2d at 348; see also *People v. Clark* (1992), 231 Ill. App. 3d 571, 574-75, 596 N.E.2d 642, 644 ("A mistrial is necessary when it appears that the jury was so influenced and prejudiced that it could not have been fair and impartial and that the damaging effect could not be cured by admonitions and instructions"); *People v. Dotson* (1986), 143 Ill. App. 3d 135, 146, 492 N.E.2d 903, 910 ("The power to grant a mistrial in a criminal prosecution should be used with the greatest caution, under urgent circumstances and for very plain and obvious causes ***").) To warrant the reversal of a court's denial of a motion for a mistrial, the appellant must show that he suffered prejudice from both the introduction of the incompetent evidence which precipitated the motion and the court's subsequent denial thereof (*People v. Williams* (1985), 137 Ill. App. 3d 736, 744, 484 N.E.2d 1191, 1197); he also must show that the resulting damage could not have been effectively remedied by admonitions and instructions. *People v. Alvarez* (1989), 186 Ill. App. 3d 541, 549, 542 N.E.2d 737, 742.

Defendant maintains that the words of the trial court in denying his motion for a mistrial affirmatively establish that he was prejudiced by the erroneous introduction of the facts that he had been previously charged with armed robbery and the sentence he received for the conviction on the lesser charge of robbery. While denying the motion for mistrial, the trial court stated:

"THE COURT: This is where—and this is why I am going to deny [defendant's] motion [for a mistrial]; otherwise, I would grant it.

Before—while we were talking and while—when I overruled your objection, [the prosecuting attorney], in my presence, handed you a certified copy—said to me, we are going to read paragraphs 1 and 4. I said, show it to [defense counsel]. You read it.
***
And, again the only reason I am not going to declare a mistrial is because I believe that we had an opportunity to review the [certified copy of defendant's conviction] and no one challenged the

specific reading, and she didn't read anything that wasn't on that document and which you were not given notice of. Your motion for mistrial is denied."

The trial court was evidently acting under the impression that defense counsel had mistakenly allowed the State to read into the record simply more than defendant's prior conviction to impeach his testimony. However, her recollection that counsel had approved the reading of the entire statement must be considered faulty because nowhere in the transcript of the proceedings is there a colloquy which tends to support her memory of the State providing defense counsel with a copy of the statement prior to reading it to the jury, nor does it ever appear that defense counsel agreed that the State could inform the jury of anything other than the earlier conviction for robbery.

Although the court stated that it would have granted a mistrial but for defense counsel's acquiescence which the record indicates was never actually given, we are not compelled to reverse the denial of the mistrial. Regardless of what the circuit court said, the State's mistake here does not necessitate reversal since the erroneously admitted evidence was not of such character to deprive defendant of a fair trial.

In *People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029, this court addressed an issue similar to the one presented here. There, the defendant complained that the trial court should have declared a mistrial when the State elicited from a witness that the defendant told her that he shot the victim because "he wasn't going back to the penitentiary for anybody." (113 Ill. App. 3d at 823.) The defendant maintained that the circuit court erred in declining to declare a mistrial because his statement impermissibly communicated to the jury inadmissible evidence of his prior crimes. The appellate court disagreed. It determined that the evidence of prior crimes, which was inadvertently elicited from the witness, was an isolated incident which did not so undermine the defendant's case as to have been a significant factor in the jury's decision to convict him.

That is also true here. The evidence objected to was a single reference to the charge of armed robbery and the sentence received for the crime. Like the miscue in *Winfield*, we consider the error here inadvertent, for defendant does not contend that the State misread the statement intentionally. Too, as in *Winfield*, this error hardly rises to the level where it can reasonably be considered to have played a part in his conviction; in any event, it was not so severe as to deprive him of a fair trial with an impartial jury. Moreover, in contrast to *Winfield*, where the defendant did not seek a curative instruction, the trial court here swiftly and clearly instructed the jury, *sua sponte*,

to disregard the incompetent evidence and explained to the jury that when evaluating defendant's credibility it was to consider only his prior conviction. Defendant does not persuade us that the jury did not follow this admonition (see *People v. Illgen* (1991), 145 Ill. 2d 353, 376, 583 N.E.2d 515, 525 ("Faith in the ability of a properly instructed jury to separate issues and reach a correct result is the cornerstone of the jury system")); we conclude therefore that he was not prejudiced by the State's slip. Accordingly, the refusal of the court to declare a mistrial was not in error.

### III

Defendant's third assignment of error concerns the trial court's refusal to supply the jury with verdict forms for theft, thus foreclosing the possibility that it would have convicted him of that lesser offense rather than the greater charge of burglary. Relying on our supreme court's decisions in *People v. Dace* (1984), 104 Ill. 2d 96, 470 N.E.2d 993, and *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, he maintains that theft is a lesser included offense of burglary, and he was therefore entitled to an instruction to that effect.

At issue in *Dace* was whether Illinois should adopt the "inherent relationship" test[1] to determine when an offense should be considered the lesser included offense of the one charged. The defendant argued and the appellate court, after adopting the test, agreed that under it, theft was a lesser included offense of burglary, the crime for which he was charged. The appellate court held therefore that the circuit court committed reversible error by not submitting the tendered instruction and verdict forms on theft to the jury. Although the supreme court affirmed the appellate court's decision, it rejected its rationale, declining to adopt the "inherent relationship" test for the purpose of Illinois law. Instead the court found, on the particular

---

[1]Under this test, a defendant would be entitled to an instruction on a lesser offense than the one charged when the

> " 'lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must be an 'inherent' relationship between the greater and lesser offenses, *i.e.*, they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.' " *United States v. Whitaker* (D.C. Cir. 1971), 447 F.2d 314, 319, quoted in *Dace*, 104 Ill. 2d at 100, 470 N.E.2d at 995.

facts of the case, that the circuit court should have instructed the jury on theft as well as residential burglary because the "information charged the specific intent to commit theft and the offense of theft was proved by the evidence." *Dace*, 104 Ill. 2d at 103, 470 N.E.2d at 996.

In *Bryant* (113 Ill. 2d 497, 499 N.E.2d 413), the court addressed the issue of whether criminal damage to property is a lesser included offense of the charged crime of attempted burglary. Citing *Dace*, the court held that because the charging instrument set out the "main outline" of the lesser offense, the trial court should have allowed the jury to convict the defendant of that lesser crime. (*Bryant*, 113 Ill. 2d at 505.) It determined that as long as the lesser one was a foundational requirement of the charged crime, it did not matter that the indictment did not expressly allege all the elements of the less grievous offense.

Under *Bryant* and especially *Dace*, it would appear that the court did err by not providing the jury the tendered verdict forms for theft. Here, the information alleged that defendant knowingly entered the premises of another without authorization and with the specific intent to commit a theft inside. In *Dace*, the court found that the allegation of the specific intent to commit theft, coupled with evidence tending to prove all of the elements of theft, warranted an instruction on the crime when, as in this case, the State charged the individual with burglary. Even more so here than in *Dace*, the State's evidence established the crime of theft in that it proved what it alleged in its information: that defendant "exert[ed] unauthorized control over property of the owner" (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1)), namely, the coins and currency owned by DollarBuster, Inc.; and, by his admission that he put the money in his pockets, the evidence showed that he concealed it with knowledge that he would probably permanently deprive its rightful owner of the money.

The State responds that with its decision in *People v. Schmidt* (1988), 126 Ill. 2d 179, 533 N.E.2d 898, the supreme court has overruled *Dace sub silentio*. In *Schmidt*, while affirming the defendant's conviction for residential burglary, the court vacated his theft conviction for the reason that the State never charged him with that offense. The court reiterated the prevailing rule before *Dace* that "[t]heft is not a lesser included offense of burglary." (*Schmidt*, 126 Ill. 2d at 183-84, 533 N.E.2d at 900, citing *People v. Baker* (1978), 57 Ill. App. 3d 401, 405, 372 N.E.2d 438.) The court in *Schmidt* referred to its apparent dissonance with *Dace* as follows:

> "In concluding that where an accused is charged with a single offense he cannot be found guilty of an offense not charged unless

it is a lesser included offense, we are not unaware of *People v. Dace* \*\*\*. We would observe that in *Dace* the fundamental question just stated was not presented to or considered by the court." *Schmidt*, 126 Ill. 2d at 184-85, 533 N.E.2d at 901.

Appellate decisions subsequent to *Schmidt* have opined that the holding in that case is irretrievably incompatible with *Dace*, and thus *Dace*, which was decided earlier, is to be ignored on this particular point. (*People v. Maldonado* (1992), 224 Ill. App. 3d 913, 586 N.E.2d 788; *People v. Booker* (1991), 214 Ill. App. 3d 286, 573 N.E.2d 385; *People v. Johnson* (1990), 206 Ill. App. 3d 318, 564 N.E.2d 232.) The court in *Booker* concluded that the above-quoted language from *Schmidt* manifested the court's intention to limit its decision in *Dace* to be only a refusal to adopt the "inherent relationship" test. Accordingly, *Dace* should not be construed to signal a departure from the preexisting rule as to when a defendant charged with one offense may be convicted of another which is not a lesser included offense, as that phrase had been normally understood in Illinois. See, *e.g.*, *People v. Melmuka* (1988), 173 Ill. App. 3d 735, 736, 527 N.E.2d 982, 983 ("In order to be considered a lesser included offense, all of its elements must be subsumed in the greater offense, so that it is impossible to commit the greater offense without necessarily committing the lesser").

■ Defendant replies that the supreme court put to rest any speculation about the invalidity of *Dace* and *Bryant* with its decision in *People v. Jones* (1992), 149 Ill. 2d 288, 595 N.E.2d 1071, where the court tracked the language of *Bryant* to find that the defendant could be found liable for theft even though charged only with armed robbery. However, an analysis of *Jones* does not bear out defendant's contentions with regard to the supposed rule of *Dace*. Although the court cited *Bryant*, it followed the traditional analysis to determine whether theft was a lesser included offense of robbery. It stated that "a lesser included offense is one composed of some, but not all, of the elements of the greater offense, and which does not have any element not included in the greater offense." (*Jones*, 149 Ill. 2d at 293, 595 N.E.2d at 1073.) Following this definition, theft cannot be considered a lesser included offense of burglary since unlike that offense which requires only the intent to commit a theft or other felony, the crime of theft is not complete until the perpetrator actually obtains or exerts unauthorized control over the property of another. (Ill. Rev. Stat. 1991, ch. 38, par. 16—1; see also *Melmuka*, 173 Ill. App. 3d at 737, 527 N.E.2d at 984 ("By definition, burglary does not require a taking, and theft does not require an entry. [Citation.] Thus, \*\*\* theft is not a lesser included offense of burglary").) Consequently, under

the currently controlling supreme court precedent, we are constrained to hold that the trial court was not in error in refusing to submit for the jury's consideration the lesser offense of theft.

## IV

In the final issue on appeal, defendant urges vacation of his sentence due to alleged legal errors and factual misunderstandings made by the court while passing sentence. His complaints do not merit serious consideration, however, because they depend on his unfair contorting of the circuit court's words in an attempt to demonstrate that it misunderstood the pertinent law and the facts before it. He first asserts that the trial court, even though sentencing him as a Class X offender, nonetheless wanted to impose only the maximum term for an unextended Class 2 offense. According to defendant, the court mistakenly believed that the maximum unextended term was 14 years, when it is in fact only seven. He concludes that had the court realized its error, it would not have sentenced him to 14 years, but to only seven, and as a result, his case must be remanded to the trial court for the passing of a new sentence.

■ In making this argument defendant conveniently overlooks the fact that as an individual whose criminal career reaches back nearly 30 years, he was uniquely qualified for extended-term sentencing, a fact of which the court was doubtless aware. In view of his two recent felony convictions, defendant was eligible under sections 5—5—3.2(b)(1) and 5—8—2(a)(4) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—5—3.2(b)(1), 1005—8—2(a)(4)) to be sentenced to a term of up to 14 years' imprisonment. Accordingly, the trial court did not misspeak when it stated that his sentence of 14 years would amount to the maximum *allowable* Class 2 sentence.

Defendant also claims that the court improperly considered as factors in aggravation that defendant had twice been convicted of attempted murder, when he actually had only one such conviction. Defendant's contention is baseless. While the court initially stated that defendant had two prior convictions for attempted murder, it later recognized its error after which it explained that its misapprehension had no effect on the sentencing decision. The court emphasized that defendant's punishment was not dependent on any one crime in particular, but was based on his entire criminal past. Since the record discloses that after contemplating defendant's correct criminal history, the court still found him deserving a 14-year sentence, there is no need for this court to remand this action for a new sentencing hearing on this ground either.

Defendant finally reasons that since he did not receive the minimum Class X sentence, the trial court must have considered his previous convictions for robbery and attempted murder while setting his sentence within the statutory Class X range. He urges vacation of his sentence because those crimes were already taken into account, as they were the predicate felonies which boosted his Class 2 felony up to Class X sentencing under section 5—5—3(c)(8) of the Unified Code of Corrections (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3(c)(8)); therefore, he maintains that those earlier felonies were used for impermissible double enhancement of the instant crime.

Once again, however, defendant forgets to mention that he has an extensive and deplorable criminal record which began when Lyndon Johnson was president. In addition, he omits reference to the fact that the court did not rely exclusively on his two most recent felony convictions, but instead, reiterated throughout that defendant's sentence was grounded on his arrant recidivism.

In *People v. Harvey* (1987), 162 Ill. App. 3d 468, 515 N.E.2d 337, the defendant, who had four previous felony convictions, was convicted of burglary and was sentenced to a Class X term. He argued, like defendant at bar, that his prior felonies were the only existent factors in aggravation. Therefore, since those felonies must have been used to increase his punishment to Class X status, he maintained, the trial court should have sentenced him to a term approximating the minimum of the Class X statutory range. The appellate court rejected his contention, noting that only two prior felonies were needed to raise his punishment to the Class X level; consequently, the court did not abuse its vast sentencing discretion by considering in aggravation the other two felonies. (See *People v. Ashford* (1988), 121 Ill. 2d 55, 88, 520 N.E.2d 332, 346 ("[G]reat deference is to be accorded a trial judge's sentencing decision ***"); see also *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 883; *People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330.) Here, as already discussed, defendant was a career criminal with little apparent hope of, or bent for, rehabilitation. These are factors which were properly considered by the trial court in reaching its sentencing decision; therefore, his sentence of 14 years will not be set aside.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.