# Illinois Official Reports

## Appellate Court

*People v. Henson*, 2017 IL App (2d) 150594

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES R. HENSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0594 |
| Filed | October 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 14-CF-503; the Hon. Gordon E. Graham, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Ann M. Fick, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Lawrence M. Bauer, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, James R. Henson, appeals from his conviction of two counts of burglary (720 ILCS 5/19-1(a) (West 2014)) and one count of possession of burglary tools (720 ILCS 5/19-2 (West 2014)). Defendant raises three issues on appeal: (1) whether the trial court properly refused defendant's proposed jury instruction on theft as a lesser included offense of burglary, (2) whether the trial court conducted an adequate inquiry into defendant's *pro se* posttrial claims of ineffective assistance of counsel, and (3) whether defendant is entitled to a $5-per-day credit against certain fines for time spent in presentencing custody. For the reasons that follow, we find that the trial court's refusal to instruct the jury on the lesser included offense of theft is reversible error. As that issue is dispositive, we need not address the remaining issues. We reverse and remand for a new trial.

¶ 2                                I. BACKGROUND

¶ 3    On June 18, 2014, defendant was indicted on two counts of burglary (720 ILCS 5/19-1(a) (West 2014)) and one count each of unlawful possession of burglary tools (720 ILCS 5/19-2 (West 2014)), theft (720 ILCS 5/16-1(a)(1)(A) (West 2014)), criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2014)), and criminal trespass to real property (720 ILCS 5/21-3(a)(2) (West 2014)) arising out of the unlawful entry of two trucks owned by MJ Electric, LLC, located on property owned by Curran Group, on May 31, 2014. Prior to trial, the State nol-prossed the counts of theft, criminal damage to property, and criminal trespass to property.

¶ 4    The indictment alleged, *inter alia*, that defendant committed the offense of burglary in that he "knowingly entered a motor vehicle, belonging to MJ Electric, LLC, *** with the intent to commit therein a theft." There was one count of burglary for each vehicle entered.

¶ 5    The following evidence was adduced at defendant's jury trial. Crystal Lake police officer Jason Duncan testified that, at about 5:30 a.m. on May 31, 2014, he responded to a dispatch concerning a suspicious incident. When he arrived at Main Street and Virginia Road, he encountered an excited woman on the bike path, who told him that it sounded like there was something chained up in the bushes. As Duncan approached the bushes, he heard metallic clanking. Duncan walked through vegetation toward the sound and found defendant sitting in knee-high vegetation. Duncan also saw defendant's bicycle. The bicycle had a black bucket in a basket attached to the handlebars and a milk crate attached to the back. Duncan did not see anyone else in the area. Duncan asked defendant to walk toward him, and defendant complied, joining Duncan on the bike path. Duncan did not smell any smoke on defendant.

¶ 6    Crystal Lake patrol sergeant Todd Richardson arrived on the scene as Duncan called defendant out of the bushes. Defendant appeared awake, dirty, and slightly wet. His hands were very dirty. He had black smudges on his face and on the backs of his hands. The bottoms of defendant's shoes were very muddy. Richardson went into the bushes and saw a bicycle jammed into a bush. There were buckets and a basket affixed to the bicycle. On the ground near the bicycle were two white buckets with "MJ Electric" stickers on the sides. One bucket contained a mix of brass and copper fittings. The other bucket was empty and partially melted. Located next to the buckets was a pile of brass and copper fittings that looked new. Defendant had the following other items in his possession: two pairs of cloth gloves, various hand tools, two flashlights, binoculars, a large serrated knife, a pocket knife,

a screwdriver, two adjustable wrenches, two wire cutters, a long extended lighter, and a package containing multiple rolls of electrical tape.

¶ 7    Richardson testified that he examined the area around defendant. He discovered a muddy area and found a bucket, a gas can, wire, and bolt cutters. The bolt cutters were never tested for fingerprints. He also found a path of trampled vegetation that led from the muddy area to an area where there was some cable that had been burned to strip it of its insulation. About 1000 feet away from where defendant was found, Richardson found a chain-link fence that had a hole cut in it. While standing in the muddy area, he saw MJ Electric trucks parked in the Curran Group parking lot (the lot), about 50 feet away from the hole in the fence.

¶ 8    Richardson testified that, at about 6 a.m., MJ Electric field supervisor Orlando Nieves arrived at work. Richardson and Nieves entered the lot together and examined the scene. Richardson saw scraps of copper wire and insulation on the ground. Nieves told Richardson that the wire had not been left on the ground the night before; he stated that it would have been in the trucks, held in place by bungee cords. Upon examining certain trucks, Nieves noted that some five-gallon buckets that had contained spill kits had been removed from the trucks. The lids had been removed from the buckets, and the spill kits had been dumped into the beds of the trucks. Nieves saw that some locks had been cut on the side compartments of two trucks. Inside the compartments, there were empty trays that had previously contained brass and copper fittings and ground rod connectors. Richardson examined a truck that had not been entered and saw brass and copper items that were identical to those found near defendant. Richardson determined that two trucks had been broken into. Richardson checked for the presence of gravel on the bottoms of defendant's shoes, because "[if] someone had walked into that parking lot, they would have had gravel—dry gravel on their feet." Defendant's shoes were muddy, but Richardson did not see any gravel.

¶ 9    Crystal Lake police officers Krzysztof Krol and Edward Lepkowicz arrived on the scene soon after Richardson. Krol heard defendant say that he was en route to his house in McHenry and that he stayed in the bushes because he did not want to be caught on the bike path after dark for fear he would be cited for trespassing. Lepkowicz was directed by Richardson to gather the brass and copper fittings found near defendant and to bring them to the lot, which was about a quarter-mile away. Nieves identified the items as belonging to MJ Electric. Nieves stated that he needed the items for work, and they were returned to him. Lepkowicz did not attempt to obtain fingerprints from the trucks.

¶ 10    Richardson and Lepkowicz asked defendant where he got the buckets filled with the fittings. Defendant told them that he was working in residential construction with a man named Phil Cotton and that Cotton let him have the fittings while at a job site in Algonquin. Richardson questioned defendant further, because he did not believe that anyone would give away new fittings. Defendant then told him that he obtained the fittings in Elgin but that he could not provide any way to contact his boss. Richardson testified that he attempted to locate Cotton through his computer system but was unable to do so.

¶ 11    Rollin Henson, defendant's father, testified for the defense. Rollin, a roofing contractor, testified that defendant lived with him and his wife and occasionally worked with him. Defendant did not own a car, so Rollin drove him to worksites. Rollin testified that defendant pieced together a bicycle, which defendant used for personal transportation. Because the bicycle often broke down, defendant usually carried tools around with him in a bucket. These included tools for fixing his bicycle, as well as tools for taking apart and adhering roofing,

such as knives, a flashlight, a lighter, a pry bar, and a hammer. Rollin identified a picture of defendant's shoes and stated that they had roofing material and plastic roofing cement stuck on them. Rollin could not recall if defendant worked on a roofing job on May 30, 2014, but he stated that he would not have sent defendant on a job in the middle of the night. He denied that there was a roofing job for MJ Electric on May 30, 2014. Rollin did not use bolt cutters or binoculars for his job, but he did use his camera's zoom lens at times to see things on the ground from the roof.

¶ 12 An informal jury-instruction conference took place off the record. The next day, the conference continued on the record. Defense counsel addressed the trial court's refusal to instruct the jury on theft. Defense counsel argued that an instruction on a lesser offense must be given upon the defendant's request if the charging instrument described the lesser offense and if the evidence at trial would permit a rational jury to convict the defendant of the lesser offense and acquit him of the greater offense. The State countered that the instruction on theft was not warranted because it had not charged defendant with possession of property, an element of theft. The trial court found that, using the "abstract elements approach to analyze the language contained in the Bill of Indictment[,] *** theft is not a lesser-included offense under the circumstances," and it denied the instruction.

¶ 13 The jury found defendant guilty of two counts of burglary (720 ILCS 5/19-1(a) (West 2014)) and one count of possession of burglary tools (720 ILCS 5/19-2 (West 2014)).

¶ 14 On April 21, 2015, defendant filed a motion for a new trial, which he amended on May 28, 2015. Defendant argued, *inter alia*, that the trial court erred in failing to instruct the jury on theft. On April 29 and 30, defendant filed several *pro se* motions. A hearing on the motions took place on May 28, 2015. After denying defendant's *pro se* motions, the trial court denied defendant's amended motion for a new trial. Following a sentencing hearing, the trial court sentenced defendant to concurrent prison terms of 16 years for each count of burglary and 3 years for possession of burglary tools.

¶ 15 Following the denial of his motion for reconsideration of his sentence, defendant timely appealed.

¶ 16             II. ANALYSIS

¶ 17 Defendant contends that the trial court committed reversible error when it refused to instruct the jury on theft. According to defendant, the trial court relied on the wrong standard in determining whether theft was a lesser included offense of burglary.

¶ 18 Section 2-9(a) of the Criminal Code of 2012 defines a lesser included offense as one that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2-9(a) (West 2014). "There are three methods for determining whether an offense is a lesser-included offense of another: (1) the 'abstract elements' approach; (2) the 'charging instrument' approach; and (3) the 'factual' or 'evidence' adduced at trial approach. [Citations.]" *People v. Kennebrew*, 2013 IL 113998, ¶ 28. The abstract-elements approach applies when the issue is whether one charged offense is a lesser included offense of another charged offense. See *People v. Miller*, 238 Ill. 2d 161, 172-73 (2010). The charging-instrument approach applies when the issue is whether an uncharged offense is a lesser included offense of a charged offense. *People v. Kolton*, 219 Ill. 2d 353, 362-63 (2006). Here, because the State nol-prossed the theft charge prior to trial, the

charging-instrument approach governed. Thus, the trial court erred in using the abstract-elements approach in determining that theft was not a lesser included offense of burglary.

¶ 19 Under the charging-instrument approach, "the lesser offense need not be a 'necessary' part of the greater offense, but the facts alleged in the charging instrument must contain a 'broad foundation' or 'main outline' of the lesser offense. [Citations.] 'The indictment need not explicitly state all of the elements of the lesser offense as long as any missing element can be reasonably inferred from the indictment allegations.' [Citation.]" *Kennebrew*, 2013 IL 113998, ¶ 30. Here, the indictment alleged that defendant committed the offense of burglary in that he "knowingly entered a motor vehicle, belonging to MJ Electric, LLC, *** with the intent to commit therein a theft." The offense of theft is committed when a person knowingly obtains or exerts unauthorized control over property of the owner and intends to deprive the owner permanently of the use or benefit of the property. 720 ILCS 5/16-1(a)(1)(A) (West 2014). The State agrees that, by alleging that defendant entered MJ Electric's trucks with the intent to commit a theft, the charging instrument necessarily implied that defendant intended to obtain unauthorized control over MJ Electric's property. See *People v. Hamilton*, 179 Ill. 2d 319, 325 (1997). As such, the State concedes that the charging instrument sufficiently identified theft as a lesser included offense of the charged offense of burglary.

¶ 20 Nevertheless, as the State notes, the identification of theft as a lesser included offense of burglary does not automatically create a correlative right to have the jury instructed on it. "A defendant is entitled to a lesser included offense instruction only if an examination of the evidence reveals that it would permit a jury to rationally find the defendant guilty of the lesser offense yet acquit the defendant of the greater offense." *Id.* at 324. Here, the State argues that the evidence did not permit a rational finding by the jury that defendant was guilty of theft, but not of burglary. We disagree.

¶ 21 *People v. Buress*, 274 Ill. App. 3d 164 (1995), is instructive. In *Buress*, the defendant was convicted of burglary. See *People v. Buress*, 259 Ill. App. 3d 217, 221 (1994). On appeal, he argued, *inter alia*, that the trial court erred in refusing to instruct the jury on theft. *Id.* at 226. The evidence established that the police, who were responding to a call concerning a burglary in progress, came upon the defendant in an alley behind the location of the suspected burglary. *Id.* at 219. The defendant was observed bent over near a garbage dumpster, rapidly gathering coins that were strewn about the alley and putting the coins in his pockets. *Id.* A cash register was perched on the dumpster. *Id.* The defendant told the officers that he was just collecting coins from the ground. *Id.* The officers discovered a nearby store with a broken glass window. *Id.* The store's cash register was missing. *Id.* A trail of coins led from the store's broken window to the dumpster. *Id.* The defendant testified that he saw the coins on the ground and followed the trail to the alley, where he found the cash register and picked up the remaining coins. *Id.* at 220. There were no shards of glass found on the defendant's clothing, no vehicle was observed leaving the scene, and no one other than the defendant was seen in the area. *Id.* at 219.

¶ 22 On appeal, the defendant argued that the trial court erred in refusing to instruct the jury on theft, as it was a lesser included offense of burglary. *Id.* at 226. The appellate court, applying the abstract-elements approach, disagreed and affirmed. *Id.* at 229. Subsequently, however, the supreme court issued a supervisory order, directing the appellate court to reconsider its decision in light of *People v. Novak*, 163 Ill. 2d 93 (1994). *Buress*, 274 Ill.

App. 3d at 165. Upon reconsideration, the appellate court found that, under the charging-instrument approach, the defendant was entitled to the theft instruction. The court stated:

> " '[T]he information alleged that defendant knowingly entered the premises of another without authorization and with the specific intent to commit a theft inside' and 'the State's evidence established the crime of theft in that it proved what it alleged in its information: that defendant "exert[ed] unauthorized control over the property of its owner," [citation] namely, the coins and currency owned by DollarBuster, Inc.; and, by his admission that he put the money in his pockets, the evidence showed that he concealed it with knowledge that he would probably permanently deprive its rightful owner of the money.' " *Id.* at 167 (quoting *Buress*, 259 Ill. App. 3d at 227).

¶ 23 There is no question that here, as in *Buress*, the evidence would permit the jury to rationally conclude that defendant was guilty of theft but not of burglary. As in *Buress*, defendant was found with property identified as belonging to a nearby business that had recently been burglarized. Like the cash register in *Buress*, several other items from the burglarized business were found nearby. Also, as in *Buress*, there was no direct evidence establishing defendant's entry into the business's property. Although Richardson looked specifically for gravel on defendant's shoes as evidence of defendant's presence in the lot, he did not see any. The officers did not obtain security video from the lot or fingerprints from the bolt cutters or trucks. Although the evidence was such that the jury could infer defendant's entry, this was not the only rational inference. As the jury could rationally find defendant guilty of theft, he was entitled to have the jury consider that option as an alternative to a verdict of guilty or not guilty of burglary.

¶ 24 Nevertheless, according to the State, defendant cannot contend that he committed a lesser included offense because defendant's statements to the police and defendant's argument to the jury indicated that his involvement originated when he found the fittings near the path, after the burglary offense was completed. (Defendant told the police that he was given the brass and copper fittings by a friend, and he argued at trial that he came upon the proceeds of the burglary by happenstance and decided to keep them.) The State maintains that, if the jury accepted defendant's version of events, a theft instruction "would be directed at a separate offense committed at a separate time" and thus would not be appropriate.

¶ 25 In support of its "separate offense" argument, the State relies on *People v. Chandler*, 278 Ill. App. 3d 212 (1996). In *Chandler*, the defendant was charged with and convicted of burglary, based on an accountability theory. *Id.* at 213. On appeal, the defendant argued that the trial court erred in refusing to instruct the jury on the lesser included offense of theft. *Id.* The burglary in that case involved boxes of oranges that had been taken from a church storage room and sold to a supermarket located across the street. *Id.* A police officer testified that the defendant told him that he and the codefendant (who pleaded guilty to the burglary) went to the church to break into the storage room. *Id.* at 214. The defendant told the officer that the codefendant entered the church through a window and retrieved the boxes of oranges. *Id.* The codefendant then opened the front door to the church and handed the boxes to the defendant. *Id.* The men then took the boxes down an alley to a field, to hide them while they went to the supermarket to negotiate the subsequent sale. *Id.* However, the codefendant testified that he removed the boxes from the church and placed them in the alley by himself

and that the defendant later accompanied him back to the alley to retrieve the boxes and sell the oranges to the supermarket. *Id.* On appeal, the defendant argued that he was entitled to a theft instruction because his involvement was limited to taking the boxes from the alley, after the codefendant removed them from the church, and selling them to the supermarket. *Id.* at 216. The reviewing court disagreed, stating: "[The] defendant in the present case cannot contend he committed a lesser included offense because codefendant's testimony is that defendant's involvement originated and occurred entirely after the burglary offense was completed. This is a separate offense, not a lesser included offense." *Id.*

¶ 26     We disagree with the holding in *Chandler*. There, as here, there was evidence supporting a conviction of either burglary (the defendant's statement to the police) or theft (the codefendant's testimony). Yet the court held that the evidence of theft did not warrant a theft instruction because the alleged theft was "actually a separate crime committed after the greater offense was completed." *Id.* at 217. But this was just as true in *Buress*; the defendant's theory was that, after someone else had committed the burglary, the defendant had merely stolen the proceeds.

¶ 27     In describing the theft as "separate," the *Chandler* court relied on *People v. Landwer*, 166 Ill. 2d 475 (1995). But *Landwer* is clearly distinguishable. There, the indictment alleged that the defendant committed solicitation of murder for hire by procuring Robert Holguin to murder two of the defendant's employees. *Id.* at 487. The supreme court agreed that solicitation to commit aggravated battery was a lesser included offense because it could be proved by the same facts and a less culpable mental state under the indictment. *Id.* But because the defendant raised an entrapment defense to the greater offense (solicitation of murder), and thus admitted the elements of that offense, the court held that he could not simultaneously present the jury with the option of finding him guilty only of a lesser offense (solicitation of aggravated battery). *Id.* at 489. By raising the entrapment defense, the defendant admitted to the elements of solicitation of murder, and the sole disputed element was whether the defendant was entrapped. *Id.* at 488. Thus, "the same facts that are relevant to prove defendant was entrapped into solicitation of murder do not establish that he solicited an aggravated battery." *Id.* at 489.

¶ 28     The supreme court did go on to observe that, in any event, a defendant may not "raise as a defense to one charged transaction that he or she committed some separate uncharged transaction, occurring on different days and involving different participants." *Id.* at 490. "Such does not meet the definition of an included offense because the indictment does not present any outline or foundation for that crime." *Id.* at 491-92. The court made this statement in response to the defendant's argument that, in addition to raising the entrapment defense to the charged crime of soliciting Holguin to murder his employees, he should have been allowed to present the jury with a third option, *i.e.*, "that he solicited Robert Holguin or Barbecue Jerry to commit an aggravated battery at some other time." *Id.* at 490. The court thus noted that a defendant is not entitled to an instruction on a lesser offense unless that offense is a lesser *included* offense. Because the facts alleged in the indictment did not present any outline or foundation for the crime that the defendant "solicited Robert Holguin or Barbecue Jerry to commit an aggravated battery at some other time," that crime was not a lesser included offense. *Id.*

¶ 29     Thus, contrary to the analysis in *Chandler*, the issue here is not whether the lesser offense is "separate"; the issue is whether the indictment set out the outline of the lesser offense such

- 7 -

that the lesser offense is "included." Because theft was "included" here, and because there was evidence that would have supported a conviction of theft and an acquittal of burglary, the trial court erred in refusing a theft instruction.

¶ 30 We note that the State asserts that the trial court's refusal to issue the lesser-included-offense instruction, even if error, was harmless. However, this court has previously held that the failure to give a lesser-included-offense instruction is not subject to a harmless-error analysis. See *People v. Blan*, 392 Ill. App. 3d 453, 459 (2009).

¶ 31 Based on the foregoing, we find that the trial court's refusal to instruct the jury on theft as a lesser included offense was reversible error. Although we reverse defendant's convictions on the instructional issue, we also note that the evidence was sufficient to prove his guilt beyond a reasonable doubt. Thus, a retrial will not violate defendant's right to be free from double jeopardy. See *People v. Jiles*, 364 Ill. App. 3d 320, 330-31 (2006).

¶ 32                                        III. CONCLUSION

¶ 33 For the reasons stated, we reverse defendant's convictions, and we remand for a new trial.

¶ 34 Reversed and remanded.