2022 IL App (2d) 210238
No. 2-21-0238
Opinion filed August 24, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-411 |
| SABASTIAN L. ZARBOCK, | ) ) | Honorable Robert A. Wilbrandt Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    At issue in this appeal is whether, following a bench trial, the trial court erred in finding

defendant, Sabastian Zarbock, guilty of unlawful possession of a controlled substance (720 ILCS

570/402 (West 2018)) on the basis of legal accountability (720 ILCS 5/5-2(c) (West 2018)).

Defendant was initially charged with drug-induced homicide (*id.* § 9-3.3(a)) stemming from the

overdose death of Shannon Finn (Shannon), and the trial court found him not guilty of that offense.

However, it found defendant guilty of Shannon's unlawful possession of heroin, as an uncharged

lesser included offense of drug-induced homicide.

¶ 2    Defendant argues that unlawful possession was not a lesser included offense of drug-

induced homicide. He also argues that his counsel was ineffective for failing to move to suppress

statements he made to the police and that the evidence was insufficient to convict him of unlawful possession of a controlled substance. For the reasons herein, we agree that Shannon's unlawful possession was not a lesser included offense of the alleged drug-induced homicide. Accordingly, we reverse.

¶ 3                                             I. BACKGROUND

¶ 4     On June 27, 2019, a grand jury indicted defendant on three counts of the offense of drug-induced homicide. Count I charged defendant with drug-induced homicide (720 ILCS 5/9-3.3(a) (West 2018)), in that he, or one for whose conduct he was legally responsible, knowingly delivered heroin to another and, thereafter, Shannon ingested the heroin, causing her death. Count II was identical except that the drug allegedly delivered and ingested was fentanyl instead of heroin. Count III was also the same except it alleged delivery and ingestion of both fentanyl and heroin.

¶ 5     Defendant's bench trial began January 13, 2021, and lasted several days. The State's first witness was Justin Finn (Justin), who testified as follows. He was Shannon's brother, and in May 2019 he had lived with Shannon and his girlfriend, Miranda Martinez, in an apartment on Elm Street in Algonquin. Shannon was living with him because she had just gotten out of rehab for substance abuse. He was familiar with her substance abuse issues, "[t]o an extent." She had regularly used marijuana and alcohol, but her drug of choice had shifted to heroin. He was aware that Shannon had previously overdosed on April 30, 2019, and she had been administered Narcan and taken to the hospital.

¶ 6     On May 27, 2019, Justin came home from work sometime around 8 or 9 p.m. Martinez was home when he arrived, and Shannon returned home around 11 p.m. He recalled that Shannon was "breathing kind of funny" when she was sleeping on the couch that night. He described the breathing as if her nose was clogged and she was taking a "really deep exhale" every five to seven

seconds; it sounded a bit "like grunting." He kept checking on her hourly, for a total of around five times. Her breathing returned to normal at some point, and that was when he went to bed.

¶ 7    Justin woke around 7 a.m., and he noted that Shannon's breathing seemed fine. He went back to sleep until 11 a.m. Between 7 and 11 a.m., he did not check on her. When he found Shannon after 11 a.m., she was half off the couch, with her head and neck on the floor. He screamed Shannon's name multiple times, and Martinez attempted CPR and tried to give her Narcan. Shannon had given Narcan to Martinez "just in case." The Narcan did not help, and Justin called for an ambulance.

¶ 8    Martinez testified as follows, largely consistent with Justin's testimony. On the afternoon of May 27, 2019, she had observed defendant at the apartment with Shannon. He was sitting on a small couch by Martinez's door. Shannon left the apartment with defendant, and she returned later that night alone. When Shannon returned, she "did not seem herself, but she did not seem completely off."

¶ 9    Martinez and Justin went to bed around 4 a.m., after Shannon's breathing irregularity seemed to subside. Martinez awoke the next morning to Justin yelling both her and Shannon's names. She administered Narcan to Shannon, but it did not have an effect. Shannon had given her a Narcan nasal spray when she got out of rehab, saying that it was in case she relapsed.

¶ 10    Antonia Serio testified next as follows. She was a heroin addict, and she had last used heroin on April 19, 2020. She had known defendant since at least May 2019, and she knew him "through using." They had traveled together on the afternoon of May 27, 2019, to obtain heroin at "some mall" in what she thought was Oak Brook. She drove defendant, Shannon, and a person named Carlos. Defendant had brought Shannon; Serio had not met Shannon before.

¶ 11    At the mall, they waited for the drug dealer, Melo. Melo was not the drug dealer's real name; she later identified Melo as Rufus McGee. Melo eventually arrived, and they were able to complete a drug transaction in the parking lot that day. Everyone got drugs, and she believed some of them "used" in the mall parking lot, although her memory was unclear. Serio was not paid for driving the other three, but she thought they may have helped with gas money or may have given her some extra bags for driving—again, she could not remember for sure. Afterward, Antonia believed, she dropped Shannon off at her home with defendant, but she "[didn't] remember exactly." She then went home herself.

¶ 12    Haley Bucheleres was a police officer with the Village of Algonquin, and she testified as follows. On May 28, 2019, she was dispatched to Shannon's residence in Algonquin in response to a suspected overdose. She served as evidence technician for the investigation at the apartment. She found an empty Narcan container on the coffee table, and she knew that Narcan is used to revive somebody who has overdosed on opiates. Under a cushion on the couch, she found an empty Newport cigarette pack with a one-inch straw, a clear baggy containing a white powdery substance, and a red card. She collected the physical evidence, using fentanyl-resistant gloves.

¶ 13    John Palmer was a police inspector with the Village of Algonquin, and he testified as follows. He was currently assigned to the North Central Narcotics Task Force, which investigated narcotics related crimes, and he had been a part of that task force in May 2019. On May 28, 2019, he went to Justin and Martinez's apartment to investigate the suspected drug overdose of Shannon.

¶ 14    When he arrived, several others were present, including law enforcement officers, Justin, Martinez, and Christopher Bell. Bell was the father of Shannon's two sons. Palmer observed the evidence recovered from the couch near Shannon's body. The short straw was significant in that it was consistent with the ingestion of a powdered substance via snorting. The plastic bag was

notable in that it had black eagles printed on it and was consistent with the size and shape of a typical heroin bag.

¶ 15     In the course of Palmer's investigation, he met with defendant on the evening of May 28, 2019. He first met with defendant at an apartment in Crystal Lake, and then drove him to the Algonquin Police Department for an interview. The interview began at approximately 11 p.m. and continued into the next morning. The interview was recorded and admitted into evidence as State's exhibit 18. Another officer was present with them at the interview, and the interview was recorded. Through the interview, Palmer learned that defendant was with Carlos Cazares, Serio, and Shannon on the evening of May 27, 2019. Antonia drove, Cazares was in the front seat, defendant was in the rear driver's seat, and Shannon was in the rear passenger's seat. Shannon did not personally know Melo; her connection to him was through defendant, who had Melo's phone number memorized. Defendant said that he was her "connect" for the drugs she obtained. Palmer explained that a person who is the "connect" for heroin typically has a "finder's fee"—that is, the person with the dealer gets a portion of the narcotics based on being able to connect a buyer to the dealer. "[T]he person with the money obviously gets the largest share of the drugs," and the driver may also get a cut of the drugs.

¶ 16     At the conclusion of the interview, Palmer drove defendant back to his apartment. When he dropped defendant off, defendant told Palmer that he believed the bags of narcotics obtained on May 27, 2019, had a black pattern on the bags. His description was consistent with the baggy recovered near Shannon. Palmer arrested defendant on June 5, 2019.

¶ 17     From the interview, Palmer learned that defendant primarily used Facebook Messenger to communicate. Palmer obtained a search warrant for defendant's Facebook account, and defendant also showed him his account. Facebook responded to the warrant, returning a file containing

Facebook Messenger messages and a certificate of authenticity. Palmer identified Facebook messages between defendant and Shannon, as well as between defendant and Cazares and defendant and others.

¶ 18    The trial court accepted Dr. Mark Peters, a forensic pathologist in private practice, as an expert in forensic pathology and allowed him to testify as to cause of death. Peters testified as follows. He performed an autopsy on Shannon on May 30, 2019. During the internal examination, he noted that she had mild to moderate congestion and edema of her lungs, which, coupled with her toxicity report, was a common finding in opioid overdoses.

¶ 19    Samples of Shannon's blood and urine had been sent to a lab for a toxicological analysis. The toxicological report Peters received indicated that she had morphine, fentanyl, acetyl fentanyl, and codeine in her blood. Acetyl fentanyl was not a prescribed medication; it would be present only in illegal drugs. Those compounds found in her blood were also found in her urine, as was 6-monoacetylemorphine, which was a metabolite of heroin. She would not have had this compound in her urine unless she had consumed heroin shortly before death. It was his opinion that Shannon died of adverse effects of heroin, acetyl fentanyl, and fentanyl. The ingestion of drugs would have been within hours of her death.

¶ 20    Barbara Schuman was a forensic scientist specializing in drug chemistry for the Illinois State Police Rockford Forensic Science Laboratory, and the court accepted her as an expert in forensic drug chemistry. She examined the contents of the baggy taken as evidence from the scene of Shannon's death. The powder from the baggy, which had black eagles on it, weighed 0.4 grams without any packaging. She tested the substance, and, based on her results, testified that the powder conclusively contained heroin. There were indications that the powder also contained fentanyl, but

the results she obtained did not provide enough information to conclusively identify fentanyl. It was therefore her opinion that the 0.4 grams of powder contained heroin.

¶ 21    Defendant moved for a directed finding, and the trial court denied the motion. The defense did not call any witnesses. The trial court ordered the parties to submit written closing arguments, and the trial court asked them to address the State's theory of accountability in their arguments. In the trial court's comments on the State's theory of accountability, it remarked, "I don't think he's been charged by the State with possession. The only thing that I can see that the defendant is charged with is drug-induced homicide." The State responded that "possession is a lesser included [(offense of drug-induced homicide)] as well." In defendant's closing argument, counsel argued that possession was not a lesser included offense.

¶ 22    The trial court issued its memorandum decision on February 16, 2021. The trial court made the following findings of fact regarding defendant's actions during the evening of May 27, 2019, and into the following morning. On May 27, 2019, Shannon contacted defendant seeking drugs, defendant was aware that she was seeking drugs, and he desired to assist her. They had previously used illegal drugs together. Defendant contacted Cazares, seeking illegal drugs, and Carlos in turn contacted Serio, seeking drugs. Serio contacted a person known as Melo and arranged for a meeting to obtain drugs. Defendant had no direct contact with Melo or Melo's "runner" on May 27, 2019, and he was not aware that Serio had contacted Melo or what they had agreed upon. Defendant did not own the vehicle used to obtain the drugs and was never in physical control of the vehicle on that date. Further, defendant "did not purchase or take delivery of any illegal drugs directly from" Melo. Nor did he personally deliver any illegal drugs to Shannon on May 27, 2019.

¶ 23    By defendant's admission, the trial court continued, he saw Shannon take possession of heroin from Melo's runner and deliver a bag to defendant and another bag to occupants in the front

seat of the vehicle. The vehicle occupants used the heroin at an unknown location somewhere between Oakbrook Mall and McHenry County. No evidence was presented regarding what, if anything, Shannon agreed to give to defendant or others in exchange for their presence with Shannon. Instead, the evidence showed that defendant agreed to "call around" and accompany Shannon in hopes that he would receive a "gift" of heroin after Shannon completed her transaction. Shannon died as a result of injecting the heroin purchased and obtained on May 27, 2019.[1]

¶ 24    The trial court found the evidence insufficient to show that defendant delivered illegal drugs to Shannon or that he was accountable for the actions of Melo and his runner. It therefore concluded that defendant was not guilty of the three counts of drug-induced homicide.

¶ 25    However, the trial court's analysis did not end there, as the State had asked it to consider the uncharged lesser included offense of unlawful possession of a controlled substance (720 ILCS 570/402 (West 2018)). The trial court determined that unlawful possession of a controlled substance was a lesser included offense of drug-induced homicide, and it found that defendant was legally accountable for Shannon's possession of heroin in that he willfully and intentionally aided her in seeking to obtain it. Therefore, the trial court found defendant guilty of unlawful possession of a controlled substance containing heroin. It found him guilty of possessing the statutory minimum amount of heroin, as there was no evidence presented as to the actual amount of heroin that Shannon possessed.

¶ 26    The trial court sentenced defendant to 24 months' probation. This timely appeal followed.

¶ 27                                    II. ANALYSIS

_____

[1]The decision lists the date as November 27, 2019, but given that Shannon was found dead on May 28, 2019, the date was a typo.

¶ 28     Defendant raises several issues on appeal: whether unlawful possession of a controlled substance was a lesser included offense of drug-induced homicide, whether defense counsel was ineffective for failing to move to suppress defendant's statements to the police, and whether the evidence was sufficient to convict defendant of possession of a controlled substance.

¶ 29     At the outset, the State argues that defendant's brief violates Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), in that his statement of facts is argumentative, provides incorrect information and improper citations, and fails to include vital evidence from trial. The State therefore requests that we dismiss defendant's appeal or, in the alternative, strike his statement of facts.

¶ 30     We agree that defendant's statement of facts is, at times, argumentative in tone and that the statement contains some citation deficiencies. For instance, to support his description of the offenses charged, defendant's brief cites the closing argument instead of the indictment and, for witness testimony, cites the trial court's memorandum decision instead of the relevant report of proceedings pages. However, we decline to dismiss the appeal or strike the statement because of these limited deficiencies. The brief's deficiencies do not significantly hinder our review, and the State's inclusion of its own statement of facts was prudent and helpful. Therefore, we merely admonish defense counsel to provide this court with a full and fair account of the relevant proceedings in accordance with Rule 341(h)(6) in any future briefing.

¶ 31     We turn first to defendant's argument that unlawful possession of a controlled substance was not a lesser included offense of drug-induced homicide. Specifically, defendant argues that his accountability for Shannon's unlawful possession of a controlled substance was not a lesser included offense of Melo's drug-induced homicide. He argues that his indictment does not contain a main outline or a broad foundation of Shannon's possession of a controlled substance. Further,

he argues that a seller can commit drug-induced homicide without the decedent knowingly possessing the controlled substance. He argues, in other words, that no reasonable defendant charged with drug-induced homicide would anticipate being convicted of the decedent's possession of a controlled substance.

¶ 32 Defendant continues that the offenses of drug-induced homicide and unlawful possession of a controlled substance involve different principal offenders and factual bases. Defendant argues that this is consistent with the purpose of the drug-induced-homicide statute, which was designed to punish dealers and not possessors. He contends that, although the two statutes each involve knowledge as the *mens rea* for the offense, the *mens rea* applies to different actors: to wit, knowledge applies to the deliverer for drug-induced homicide but would apply to the user under a possession charge. Defendant further argues that drug-induced homicide does not require that the decedent knowingly possess the controlled substance, hypothesizing a situation where a man spikes a woman's drink without her knowledge, she ingests the controlled substance, and she dies as a result.

¶ 33 Moreover, defendant argues that his defense would have been different had he known he was defending accountability for Shannon's possession as opposed to accountability for Melo's delivery that resulted in Shannon's death. In short, he argues that he did not have fair notice of a possession charge against him.

¶ 34 Defendant additionally argues that the evidence at trial did not rationally support his conviction of possession. He argues that he did not facilitate Shannon's possession but that instead Serio and Cazares arranged the sale, while he "went along for the ride" in hopes that Shannon would provide him some of her drugs.

¶ 35    The State responds first by arguing that defendant has forfeited his argument that possession of a controlled substance is not a lesser included offense of drug-induced homicide. It argues that defendant never objected in a posttrial motion in a posttrial motion to consideration of the lesser included offense in a posttrial motion and, in fact, never objected at all. The State also contends that defendant cannot rely on plain-error analysis, as he did not develop such an argument.

¶ 36    Forfeiture aside, the State argues that defendant's argument fails on the merits, as possession of a controlled substance is a lesser included offense of drug-induced homicide. It argues that the indictment provided a broad outline and sufficient notice of unlawful possession of a controlled substance, in that it lists the date of the offense, the location, the controlled substance (heroin), and Shannon as the possessor/ingestor of heroin. It approvingly cites the trial court's statement that, unless Shannon possessed heroin, "she could not have died from the heroin delivered to her, and could not have *** 'ingested a portion of the heroin into her body.' "

¶ 37    Further, the State continues, defendant concedes that the seller's possession is a lesser included offense of drug-induced homicide. It argues that a drug-induced homicide would necessarily involve a transfer of possession from the seller to the victim, and therefore the seller's transfer of possession to another would make the other's possession equally included in the offense of drug-induced homicide.

¶ 38    We disagree with the State that defendant forfeited his argument that unlawful possession of a controlled substance is not a lesser included offense of drug-induced homicide. Contrary to the State's assertion that defendant never objected at trial to consideration of the lesser included offense, after the issue was broached by the State at the end of trial, defendant argued in his written

closing argument that Shannon's possession was not a lesser included offense of drug-induced homicide.

¶ 39    Although defendant did not raise the issue in a posttrial motion, he did not have to. Whether an uncharged offense is a lesser included offense of a charged offense presents a constitutional issue of due process. *People v. Kolton*, 219 Ill. 2d 353, 359 (2006) ("A defendant in a criminal prosecution has a fundamental due process right to notice of the charges brought against him."). As such, defendant's objection in his written closing argument satisfies the exception that constitutional issues that were raised at trial and could be raised in a postconviction petition may be advanced on direct appeal without first being presented in a posttrial motion. *People v. Almond*, 2015 IL 113817, ¶ 54 (explaining that, ordinarily, to preserve an issue for review, a party must raise the issue at trial and in a written posttrial motion, but "constitutional issues that were previously raised at trial and could be raised later in a postconviction petition are *not* subject to forfeiture" (emphasis in original)).

¶ 40    We turn to the merits of defendant's argument. As we explain below, we agree with defendant that, in this case, Shannon's unlawful possession of a controlled substance was not a lesser included offense of the alleged drug-induced homicide. The relevant language for unlawful possession is found under section 402 of the Illinois Controlled Substances Act (720 ILCS 570/402 (West 2018)), which provides that "it is unlawful for any person knowingly to possess a controlled *** substance." For drug-induced homicide, section 9-3.3(a) of the Criminal Code of 2012 (720 ILCS 5/9-3.3(a) (West 2018)) provides that "[a] person commits drug-induced homicide when he or she violates Section 401 of the Illinois Controlled Substances Act *** by unlawfully delivering a controlled substance to another, and any person's death is caused by the injection, inhalation, absorption, or ingestion of any amount of that controlled substance."

¶ 41    Criminal defendants have a fundamental right to due process of law, which includes notice of the charges brought against them. *People v. Robinson*, 232 Ill. 2d 98, 104 (2008). Thus, a defendant may not be convicted of an offense they have not been charged with committing. *People v. Clark*, 2016 IL 118845, ¶ 30. However, a defendant may be convicted of an uncharged offense if it is a lesser included offense of an offense expressly charged in the charging instrument and the evidence adduced at trial rationally supports a conviction of the lesser included offense and acquittal of the greater offense. *Kolton*, 219 Ill. 2d at 360.

¶ 42    An "included offense" under section 2-9(a) of the Criminal Code of 2012 (720 ILCS 5/2-9(a) (West 2018)) is an offense "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." Courts have found that this statutory definition provides little guidance in determining whether an offense is a lesser included offense of another. *E.g.*, *People v. Kennebrew*, 2013 IL 113998, ¶ 28. Therefore, courts have employed three methods to determine whether an offense is a lesser included offense: (1) the "abstract elements" approach, (2) the "charging instrument" approach, and (3) the "factual" or "evidence" adduced at trial approach. *Id.* The abstract-elements approach applies when determining whether a charged offense is a lesser included offense of another charged offense. *People v. Henson*, 2017 IL App (2d) 150594, ¶ 18. On the other hand, when the issue is whether an *uncharged* offense is a lesser included offense of a charged offense, the charging-instrument approach applies. *Id.* (citing *Kolton*, 219 Ill. 2d at 362-63). Under the charging-instrument approach, a court looks to the charging instrument to see "whether the description of the greater offense contains a 'broad foundation' or 'main outline' of the lesser offense." *People v. Miller*, 238 Ill. 2d 161, 166 (2010) (quoting *Kolton*, 219 Ill. 2d at 361).

¶ 43    Whether an uncharged offense is a lesser included offense "is a decision which must be made on a case-by-case basis using the factual description of the charged offense in the indictment." (Internal quotation marks omitted.) *Clark*, 2016 IL 118845, ¶ 31 (citing *Kolton*, 219 Ill. 2d at 367). The factual description of the charged offense must describe, in a broad way, the conduct necessary for the commission of the lesser included offense, and any element not explicitly set forth in the charging instrument must be able to be reasonably inferred from the allegations. *Kolton*, 219 Ill. 2d at 367. In other words, the factual allegations must put the defendant on sufficient notice of the lesser included offense. *People v. Devine*, 2022 IL App (2d) 210162, ¶ 39 ("Imposition of an uncharged lesser included offense is proper if 'the defendant had sufficient notice of the uncharged offense.' " (quoting *Kennebrew*, 2013 IL 113998, ¶ 53)). Sufficient notice may be achieved where the chagrining instrument includes allegations of each element of the uncharged offense. *Kennebrew*, 2013 IL 113998, ¶ 53.

¶ 44    The charging-instrument approach is a two-tiered approach. *Id.* ¶ 30. First, the court must determine whether the uncharged offense is a lesser included offense of the greater, charged offense. *Id.* Whether an offense is a lesser included offense presents a question of law, which we review *de novo*. *Clark*, 2016 IL 118845, ¶ 32. Second, the court examines the evidence adduced at trial to determine whether the evidence was sufficient to convict of the lesser included offense. *Kennebrew*, 2013 IL 113998, ¶ 30. The court should not undertake the second step unless and until it has determined that the uncharged offense is a lesser included offense of a charged offense. *Kolton*, 219 Ill. 2d at 361. Here, we answer the first inquiry in the negative, and we therefore do not examine whether the evidence adduced at trial was sufficient to convict.

¶ 45    Count I of defendant's indictment provides as follows:

"That on or about May 27, 2019, in McHenry County, State of Illinois, Sabastian L. Zarbock, defendant, committed the offense of DRUG INDUCED HOMICIDE, in that said defendant, or one for whose conduct the defendant is legally accountable, knowingly delivered heroin, a controlled substance, to another in violation of Section 401 of the Illinois Controlled Substances Act, and Shannon D. Finn thereafter ingested a portion of the heroin into her body and said ingestion of heroin caused the death of Shannon D. Finn, in violation of Chapter 720, Section 5/9-3.3(a) of the Illinois Compiled Statutes."

Counts II and III were different only in that the controlled substances were alleged to be fentanyl (count II) and heroin and fentanyl (count III).

¶ 46    The factual allegations in the indictment are sparse. The indictment provides the date of the alleged delivery of heroin but not the time or place (although the State argues that the indictment provides the location, "McHenry County" lacks helpful specificity). The indictment does not provide context such as Shannon contacting defendant about purchasing drugs or defendant traveling with Shannon for her to purchase heroin. Although we learn of these facts through evidence adduced at trial, we do not yet consider this information under the charging-instrument approach. See *People v. Baldwin*, 199 Ill. 2d 1, 7 (2002) (in making the first-tier determination under the charging-instrument approach, courts do not consider facts adduced at trial).

¶ 47    Further, the indictment does not identify any specific person for whom defendant would be legally accountable. It does not identify the "another" to whom the heroin was allegedly delivered. The indictment also does not describe how Shannon came to ingest heroin following the alleged delivery, providing only that she thereafter ingested heroin and died as a result. It does not provide the date or location of Shannon's ingestion or death. The allegations in the indictment

put defendant on notice simply that he was charged with being responsible for a delivery of heroin in McHenry County on May 27, 2019, and that Shannon ultimately ingested the heroin and died as a result.

¶ 48    We acknowledge that, when looking at the indictment in the abstract, unlawful possession of a controlled substance would be a lesser included offense of drug-induced homicide. Under the abstract-elements approach, unlawful possession of a controlled substance is a lesser included offense of delivery of a controlled substance, and delivery of a controlled substance is an explicit element of drug-induced homicide. See *People v. Collins*, 2015 IL App (1st) 131145, ¶ 37 (unlawful possession of a controlled substance was a lesser included offense of unlawful possession of a controlled substance with intent to deliver); *People v. Coleman*, 391 Ill. App. 3d 963, 976 (2009) (unlawful possession of a controlled substance with intent to deliver was a lesser included offense of unlawful delivery of a controlled substance).

¶ 49    However, the charging-instrument approach does not entail an examination of the indictment solely in the abstract. See *supra* ¶ 43. Nor should it. The fundamental issue presented by an uncharged lesser included offense, as opposed to a charged lesser included offense, is one of sufficient notice to the defendant. See *Kennebrew*, 2013 IL 113998, ¶ 53. Therefore, we must examine not only the elements explicitly alleged in the indictment but also its factual allegations. In other words, we must determine whether defendant had sufficient notice of the uncharged criminal conduct. Relevant to this inquiry is of *whose* unlawful possession defendant would have been on notice.

¶ 50    We conclude that, in this case, defendant did not have sufficient notice of Shannon's unlawful possession of heroin and that therefore her possession was not a lesser included offense of drug-induced homicide under the charging-instrument approach. Contrary to the State's

argument that delivery necessarily involves a transfer of possession from the seller to the victim, from the indictment's inclusion of Shannon as the victim of a drug-induced homicide one could not reasonably infer that she was a party to the delivery on May 27, 2019, or that she was the "another" in the indictment—that is, the direct purchaser or transferee of the delivered heroin. Drug-induced homicide requires only that the victim die as a proximate result of the delivery. See 720 ILCS 5/9-3.3(a) (West 2018) (drug-induced homicide requires the unlawful delivery of "a controlled substance *to another*, and *any person's death* is caused by the *** ingestion *** of that controlled substance" (emphases added)); *People v. Boand*, 362 Ill. App. 3d 106, 143 (2005) (explaining that the drug-induced-homicide statute is satisfied by showing that the death was proximately caused by the delivery of the controlled substance).

¶ 51    Even if Shannon were explicitly alleged to be the transferee of the heroin, Shannon's *knowing* possession of heroin would not necessarily be inferred. See 720 ILCS 570/402 (West 2018) ("[I]t is unlawful for any person *knowingly* to possess a controlled *** substance ***." (Emphasis added.)). Although delivery to another under the drug-induced-homicide statute includes a knowing transfer of possession by the deliverer (*id.* § 102(h) (" 'Deliver' or 'delivery' means the actual, constructive or attempted transfer of possession of a controlled substance ***.")); *People v. Kidd*, 2013 IL App (2d) 120088, ¶ 33 (the drug-induced homicide statute incorporates the "knowing" mental state for the delivery of the controlled substance)), a transferee need not be in knowing possession after the delivery. Defendant's hypothetical in his brief, where a man spikes a woman's drink with a controlled substance, is but one situation in which a delivery may occur without the transferee's knowledge. Thus, under this indictment, defendant's notice of *unlawful* possession reasonably extended only to himself as the alleged deliverer or to the deliverer for

whose conduct he was alleged to be accountable. Shannon's ultimate possession as the victim, without more, did not provide defendant sufficient notice of her unlawful possession.

¶ 52    In short, defendant's indictment for drug-induced homicide needed to allege more facts from which it reasonably could be inferred that he was accountable for Shannon's unlawful possession of the delivered heroin. As we know from the evidence adduced at trial, this was a case of a fellow drug user helping his friend procure more drugs, only to result in a tragically familiar overdose death. The evidence showed that Shannon contacted defendant about purchasing "5 bags," he procured a ride for them to purchase the drugs from Melo, and they drove together to the location where she purchased heroin from Melo or his runner. However, none of this sort of information appeared in the indictment, nor could it be inferred from it.

¶ 53    Accordingly, defendant's conviction of unlawful possession of a controlled substance is vacated. See *Baldwin*, 199 Ill. 2d at 15-16 (vacating the conviction where the charging instrument did not provide sufficient notice of the lesser included offense of which the defendant was convicted). Because we resolve defendant's appeal on this issue, we do not consider his additional arguments regarding ineffective assistance of his trial counsel and the sufficiency of the evidence.

¶ 54                        III. CONCLUSION

¶ 55    For the reasons stated, we reverse the judgment of the circuit court of McHenry County.

¶ 56    Reversed.

*People v. Zarbock*, 2022 IL App (2d) 210238

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 19-CF-411; the Hon. Robert A. Wilbrandt Jr., Judge, presiding. |
| **Attorneys for Appellant:** | DePaul University Legal Clinic, of Chicago (Elizabeth Botti, of counsel, and Georgie Bierwirth, Matthew Landry, and Samuel Archie, law students), for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |