2023 IL App (2d) 220153
No. 2-22-0153
Opinion filed October 24, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-898 |
| DEMOND L. HUNT, | ) ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Demond L. Hunt, appeals from an order of the circuit court of De Kalb County granting the State's motion to dismiss his amended petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), which sought relief from his conviction of armed robbery (720 ILCS 5/18-2(a)(2) (West 2012)). Defendant claims that we must remand the cause because he did not receive reasonable assistance from counsel in the postconviction proceedings. Specifically, defendant claims that postconviction counsel failed to attach to the amended petition an affidavit from defendant substantiating a claim that trial counsel did not honor his request to have the jury instructed on the lesser included offense of theft. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant had a jury trial on two counts of armed robbery and a single count of aggravated battery (*id.* § 12-3.05(f)(2)). The evidence established that, on November 27, 2013, Beth Keller and Britany Garcia were working in the University Heights apartment complex office at 1120 Varsity Boulevard in De Kalb. Shortly after 4 p.m., a woman came into the office while Keller was on the phone. Keller asked if she could help the woman, and the woman replied that she had a question. Keller asked the woman to wait a moment, but, before Keller got off the phone, the woman left.

¶ 4        Shortly after the woman left, a man wearing a rubber mask entered the office. Keller testified that she could tell that the man was black from the skin visible through the mask's eyeholes. Garcia, who was five feet, four inches tall, testified that the man was a little taller than her, was "a little bit heavier set," and had a voice like that of a black man. The man was carrying a handgun. Keller hit a "panic button" to summon police. The man hit her in the face with the handgun. He asked for money, but Garcia told him they could not open the safe. The man then took Keller's purse, which contained her wedding band, engagement ring, Social Security card, driver's license, and some credit cards, cash, and cigarettes. The man also took Garcia's phone.

¶ 5        Mariah Romero testified that, on the incident date, she lived with defendant in an apartment at 1120 Varsity Boulevard. She, too, had been charged with armed robbery in connection with the incident. However, she agreed to testify truthfully at defendant's trial, in exchange for the opportunity to plead guilty to a reduced charge and receive a sentence of conditional discharge. At trial, Romero admitted she was the woman who tried to speak with Keller but left while Keller was on the phone. After she left the office, Romero returned briefly to her apartment and then went to a neighbor's apartment in the same building. After a few minutes, she saw defendant in the

hallway. Two police officers entered the hallway, and defendant fled. One of the officers asked Romero her name, but she gave a false name because she had a pending warrant for retail theft. The officers took her to the police station and questioned her about the robbery. She initially lied, saying she knew nothing about it. She later falsely implicated Edcedric Williams and someone named "John-John." Edcedric Williams was a black male "[s]omewhere between 5 foot 4 [inches] and under 6 foot tall."

¶ 6     When a detective interviewing Romero said he knew she was lying, she disclosed her real name. She identified defendant from a photo lineup as the person who committed the robbery. However, she falsely stated that his name was Demond Oliver. Romero testified that defendant had asked her if she would "scope out" the apartment complex's office to see where the money was kept.

¶ 7     Romero consented to a search of her apartment. Police discovered several items bearing defendant's name and other items that Romero testified were defendant's. Police also discovered a handgun. When shown a photograph of the handgun at trial, Romero recognized it as defendant's. Garcia testified that the handgun in the photograph appeared to be the same size and color as the robber's gun. The police also recovered Garcia's cell phone from the apartment. Following defendant's arrest, he was taken to the De Kalb County jail, where a diamond engagement ring was found in one of his pants pockets. At trial, Keller was shown a photograph of the ring and she identified it as hers.

¶ 8     During closing argument, the prosecutor acknowledged that Romero was not a credible witness. However, he argued that the items found in Romero's apartment and the engagement ring found in defendant's pants pocket proved beyond a reasonable doubt that defendant committed the robbery.

¶ 9    The jury found defendant guilty on all three counts. At sentencing, the trial court determined that the counts merged and imposed a 23-year prison term on one count of armed robbery. Defendant appealed, and we affirmed. *People v. Hunt*, 2016 IL App (2d) 140786, ¶¶ 1, 67.

¶ 10    On October 24, 2019, defendant filed his *pro se* postconviction petition. Defendant claimed: (1) "counsel wrongfully advised [defendant] not to take the stand on his own behalf," (2) defendant received ineffective assistance of counsel because counsel refused to subpoena video of the search that allegedly led to the recovery of Keller's engagement ring from defendant's pants pocket, (3) the trial court erred by allowing the jury to hear false testimony from Romero, (4) defendant did not receive a fair trial, and (5) defendant's right to due process was violated when law enforcement officials refused to investigate any of the initial "suspects" whom Romero named. The trial court docketed the petition for further proceedings (see 725 ILCS 5/122-2.1(b) (West 2018)) and appointed counsel to represent defendant.

¶ 11    On April 29, 2021, postconviction counsel filed an amended petition, claiming that trial counsel provided ineffective assistance by failing to (1) request a jury instruction on accomplice testimony, (2) subpoena video of defendant's search while in custody, (3) move to quash the warrant for defendant's arrest, (4) investigate suspects listed in police reports, and (5) file a motion to reduce defendant's sentence.

¶ 12    The amended petition also claimed that trial counsel provided ineffective assistance by failing to request a lesser included offense instruction on "possession of stolen property," *i.e.*, theft. See 720 ILCS 5/16-1 (West 2020) (providing that a person commits theft when that person (1) knowingly "[o]btains control over stolen property knowing the property to have been stolen or under such circumstances as would reasonably induce him or her to believe that the property was

stolen" and (2) "[i]ntends [thereby] to deprive the owner permanently of the use or benefit of the property"). The pertinent allegations appeared in paragraphs 26 through 29 of the amended petition:

"26. While preparing for the trial, counsel refused to allow *** Defendant to argue [the] lesser included offense of [theft].

27. It was *** Defendant's desire to have the lesser included offense of [theft] argued to the jury and included in the jury instructions.

28. Although, [*sic*] the record indicates that trial counsel informed the court that they were not going to present lesser included offenses[,] this was done unilaterally and without the consent of *** Defendant.

29. As such, trial counsel was ineffective when he failed to provide a jury instruction which included a lesser included offense of [theft]."[1]

¶ 13 The amended petition also claimed that counsel on direct appeal was ineffective for failing to raise the claims of ineffective assistance of trial counsel. Postconviction counsel filed a certificate of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 14 Defendant executed an affidavit verifying the amended petition, as required by section 122-1(b) of the Act (725 ILCS 5/122-1(b) (West 2020)). The verification affidavit stated that defendant "read the allegations contained in the Amended Post-Conviction Petition and affirm[ed] that they are true and correct." However, the amended petition was unaccompanied by an affidavit from

---

[1]We note that the decision, when appropriate, to request an instruction on a lesser included offense belongs to the defendant, not his or her attorney. *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994).

defendant, or any other affidavits or evidence, substantiating his claim that trial counsel unilaterally refused to request an instruction on the lesser included offense of theft.

¶ 15    The State successfully moved to dismiss the amended petition, arguing that it was untimely—as the petition was filed on October 24, 2019, and the appellate mandate issued on January 10, 2017—and that all claims of ineffective assistance of trial counsel were either forfeited or barred by the doctrine of *res judicata*. Regarding defendant's claim stemming from trial counsel's alleged failure to honor defendant's request for an instruction on the lesser included offense of theft, the State argued that whether to request such an instruction was a matter of trial strategy, which would not support an ineffective assistance claim. The State also argued that the failure to instruct the jury on the offense of theft was not prejudicial.

¶ 16    The trial court granted the motion to dismiss. The court rejected the State's argument that the petition was untimely, reasoning that the delay in filing the petition was due to the impact of mental health issues defendant suffered while incarcerated. However, the court found that the amended petition

> "[did] not allege[ ] any facts that would allow the Court to find [a] substantial showing, [(of a constitutional violation)] and so the Court agrees with the State's arguments in their motion to dismiss that the defendant's allegations were or could have been raised on direct appeal and that there are no facts, only conclusions, in the amended petition."

The court did not specifically address the claim based on trial counsel's failure to request a lesser included offense instruction. Defendant filed a timely notice of appeal.

¶ 17                                II. ANALYSIS

¶ 18    Defendant challenges postconviction counsel's performance at the second stage of proceedings under the Act.

¶ 19 We begin with a brief overview of proceedings under the Act. As we observed in *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 20:

"The Act establishes a three-stage process for the adjudication of a postconviction petition. [Citation.] If a petition is not summarily dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can move to dismiss the petition. [Citation.] If the defendant makes a substantial showing of a constitutional violation, the petition advances to the third stage, where the trial court conducts an evidentiary hearing. [Citation.]"

Here, defendant's amended petition was dismissed at the second stage. Defendant does not claim that the amended petition made a substantial showing of a constitutional violation, entitling him to an evidentiary hearing. Rather, he argues that a remand for further proceedings is required because postconviction counsel's representation was deficient.

¶ 20 As our supreme court has explained:

"The right to counsel in postconviction proceedings is wholly statutory. [Citation.] Therefore, a petitioner is entitled only to the level of assistance required by the Act. [Citation.] The Act provides for a 'reasonable' level of assistance. [Citation.] To assure the reasonable assistance required by the Act, [Rule 651(c)] imposes specific duties on postconviction counsel. [Citation.] Under Rule 651(c), counsel must: (1) consult with the petitioner either by mail or in person to ascertain the contentions of deprivation of constitutional rights; (2) examine the record of the trial court proceedings; and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the petitioner's contentions. [Citations.]" *People v. Perkins*, 229 Ill. 2d 34, 42 (2007).

When postconviction counsel files a certificate of compliance with Rule 651(c), a rebuttable presumption arises that counsel provided reasonable assistance. *People v. Addison*, 2023 IL 127119, ¶ 21. Defendant argues that postconviction counsel failed to properly amend his petition as required by Rule 651(c), thereby rebutting the presumption of reasonable assistance. According to defendant, postconviction counsel should have attached to the petition an affidavit from defendant substantiating his claim that trial counsel violated defendant's right to decide whether to request a jury instruction on the lesser included offense of theft. When postconviction counsel fails to comply with Rule 651(c), remand is required, regardless of whether the claims in the petition were meritorious. *Id.* ¶¶ 35, 44.

¶ 21    The Act has two distinct affidavit requirements for postconviction petitions. First, section 122-1(b) of the Act (725 ILCS 5/122-1(b) (West 2020)) provides that the petition must be *verified* by affidavit. Second, section 122-2 provides, in pertinent part, that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* § 122-2. Failure to comply with section 122-2 justifies the second-stage dismissal of a petition. See *People v. Spivey*, 2017 IL App (2d) 140941, ¶ 17. In *People v. Collins*, 202 Ill. 2d 59, 66-67 (2002), our supreme court explained that the requirement that the petition be verified and the requirement that the petitioner attach "affidavits, records, or other evidence" serve different purposes:

"[T]he sworn verification described in section 122-1 serves a purpose wholly distinct from the 'affidavits, records, or other evidence' described in section 122-2. The former, like all pleading verifications, confirms that the allegations are brought truthfully and in good faith. [Citation.] The latter, by contrast, shows that the verified allegations are capable of objective or independent corroboration. To equate the two is not only to confuse the

purposes of subjective verification and independent corroboration but also to render the 'affidavits, records, or other evidence' requirement of section 122-2 meaningless surplusage."

¶ 22     Here, defendant alleged in his amended petition that (1) he "desire[d] to have the lesser included offense of [theft] argued to the jury and included in the jury instructions," (2) trial counsel refused to request the theft instruction, and (3) trial counsel advised the trial court "unilaterally and without the consent of *** Defendant" that the defense would not be seeking a lesser included offense instruction. The amended petition attached the jury instructions that defendant claimed trial counsel should have presented to the trial court. However, the petition did not attach any evidentiary affidavits or explain why no such affidavits or other documentation were attached. On appeal, defendant argues that, since he signed an affidavit affirming that the contents of the petition were true and accurate, postconviction counsel "reasonably could have gotten [defendant] to provide the relevant information in another affidavit." Defendant argues explicitly that postconviction counsel was "unreasonable where he failed to get an affidavit from [defendant] detailing the conversations with trial counsel." This argument is without merit.

¶ 23     Last year, in *People v. Moore*, the First District explained:

"A perfectly general rule that a petitioner's own affidavit satisfies section 122-2 would render that section all but meaningless. A petitioner could easily satisfy that requirement by transcribing the allegations in his petition into another document called an affidavit. But this trivial exercise does not demonstrate that the allegations are 'capable of objective or independent corroboration.' " 2022 IL App (1st) 192290, ¶ 27 (quoting *People v. Allen*, 2015 IL 113135, ¶ 32).

Thus, "the sole corroboration of petitioner's own affidavit is not sufficient to advance [his] petition to the second stage." *Id.* ¶ 30. In this case, even if postconviction counsel had attached defendant's own affidavit to the petition, it would not have been sufficient to demonstrate that his allegations were "capable of objective or independent corroboration" (*Collins*, 202 Ill. 2d at 67).

¶ 24    The real question before this court is whether any affidavit at all was required. Illinois courts have long recognized that an exception to section 122-1's evidentiary affidavit requirement applies in cases where "the only affidavit [a] defendant could have furnished to support his allegations, other than his own, was that of his attorney." *People v. Hall*, 217 Ill. 2d 324, 333 (2005). As stated, a defendant's own affidavit is neither independent nor objective, but an affidavit from a defendant's trial counsel is also problematic. Our courts recognize that, in postconviction proceedings alleging ineffective assistance of counsel, postconviction petitions need not attach counsel's affidavit attesting to his or her own ineffectiveness, as the "difficulty or impossibility of obtaining such an affidavit is self-apparent." *People v. Williams*, 47 Ill. 2d 1, 4 (1970). Stated another way, the rationale for the *Williams* exception is that "[o]bviously, the defendant could not be expected to obtain an affidavit from his trial counsel stating that the attorney was ineffective." *People v. Kellerman*, 342 Ill. App. 3d 1019, 1026 (2003).

¶ 25    In *Williams*, the defendant challenged his guilty plea because his trial counsel made oral misrepresentations to him about the State's plea offer and the defendant's recourse after sentencing. *Williams*, 47 Ill. 2d at 2. Although the petition in *Williams* lacked affidavits, records, or other evidence, or an explanation for their absence, the *Williams* court reversed the dismissal of the petition. *Id.* at 2-3, 5. As the *Collins* court later explained, the *Williams* court did so because the petition "contain[ed] facts from which this court easily inferred that 'the only affidavit that

petitioner could possibly have furnished, other than his own sworn statement, would have been that of his attorney.' " *Collins*, 202 Ill. 2d at 68 (quoting *Williams*, 47 Ill. 2d at 4).[2]

¶ 26    In *Hall*, our supreme court applied the *Williams* exception where the defendant pleaded guilty to aggravated kidnapping, based on stealing a car occupied by a child. *Hall*, 217 Ill. 2d at 327, 333-34. The defendant claimed that the plea was invalid because, when he informed trial counsel that he was unaware of the child's presence in the car, counsel erroneously advised him that his ignorance was not a defense to the kidnapping charge. *Id.* at 329-30. The *Hall* court held that the reason for the defendant's failure under section 122-2 to attach independent corroborating documentation or explain its absence could "easily be inferred from the allegations of his petition and affidavit," which indicated that trial counsel gave the allegedly deficient advice during "private consultation" with the defendant. *Id.* at 333.

¶ 27    Similarly, in *Kellerman*, 342 Ill. App. 3d at 1023, the defendant submitted a verification affidavit without attaching an evidentiary affidavit to his postconviction petition, which alleged deficient oral advice of trial counsel. In a " 'Memorandum In Support' " of his petition, the defendant alleged that counsel ignored his allegation that the police had induced his confession by asserting that the prosecutor was willing to offer a reduced sentence of " 'three or four years' " in exchange for his plea. *Id.* The defendant alleged that counsel instead convinced him to accept the

---

[2]The *Williams* exception did not apply in *Collins*, where the petition contained no facts supporting such an inference; rather, the defendant merely alleged, " 'I wanted to appeal the case, which my counsel told me that he will. But never did.' " *Collins*, 202 Ill. 2d at 62, 68 (finding that the petition lacked "even a single allegation from which [an explanation for the absence of supporting evidence] could reasonably be inferred").

State's offer of 12 years, which the defendant claimed was ineffective assistance that rendered his plea involuntary. *Id.* The *Kellerman* court found that the facts of the case "fit squarely within the *Williams* exception" (*id.* at 1026) and held that the postconviction petition's failure to attach "supporting affidavits, records[,] or other evidence" (*id.* at 1023) did not justify dismissal of the petition.

¶ 28     Here, the amended petition alleges that defendant "desire[d]" to present a lesser included offense instruction on theft and that his trial counsel unreasonably disregarded that wish. Like the courts in *Williams*, *Hall*, and *Kellerman*, we can easily infer the reason for defendant's failure to provide supporting evidence for his ineffectiveness claim. Specifically, defendant's allegation that trial counsel defied his wishes that the jury be instructed on the lesser included offense of theft could have been based only on defendant's confidential discussions with trial counsel. Therefore, the only possible evidentiary support to attach to the petition would have been either (1) defendant's own affidavit, which our courts hold does not satisfy the "objective or independent corroboration" standard (*Collins*, 202 Ill. 2d at 67), or (2) trial counsel's affidavit attesting to his own ineffectiveness, which our courts do not require. Thus, the failure to attach either does not constitute unreasonable assistance of postconviction counsel under Rule 651(c).

¶ 29     We note that defendant argues, for the first time in his reply brief, that the amended petition is "a conclusory[3] suggestion that certain events did happen[,] without actual support to

_____

[3]The trial court did state, in its oral ruling dismissing the amended petition, that there were "no facts, only conclusions, in the amended petition." We disagree, as the plain language of the amended petition clearly contains factual allegations, including that defendant desired to have his

demonstrate whether they did or did not happen." Defendant argues that, although postconviction counsel "was not obligated to get [trial] counsel's affidavit, *** that does not excuse the requirement to get *any* support, particularly when some support must have existed, either from [defendant] or [from] some other source, for [(postconviction)] counsel to have presented this issue in the post-conviction petition." (Emphasis in original.) For the reasons stated above, this argument is meritless. To the extent that defendant challenges the sufficiency of the amended petition itself, he has forfeited that argument because he did not raise it in his opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued [(in the appellant's brief)] are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 30   Because defendant was excused from complying with section 122-2, postconviction counsel's failure to attach to the amended petition an affidavit from defendant does not refute postconviction counsel's certification that he made any amendments necessary to adequately present defendant's contentions. Moreover, there is no dispute that postconviction counsel fulfilled the remaining duties of Rule 651(c), *i.e.*, that he consulted with defendant to determine his constitutional claims and examined the record of proceedings in the trial court. In this respect, we also note that postconviction counsel amended defendant's petition to add the claim that trial counsel was ineffective for failing to request a lesser included offense instruction on theft. We conclude that postconviction counsel provided reasonable assistance.

¶ 31   Nominally, the only issue defendant raises on appeal is whether he received reasonable assistance from postconviction counsel, not whether dismissal of the underlying claim at issue

---

trial counsel present a lesser included offense instruction to the jury yet counsel ignored him and acted without defendant's knowledge or consent in waiving that potential theory.

(trial counsel's failure to have the jury instructed on a lesser included offense) was otherwise improper. Although defendant touches on the merits of that claim and the procedural arguments raised in the State's motion to dismiss, he does not develop those arguments enough for us to conclude that the trial court erred in dismissing the petition.

¶ 32    The claim at issue is rooted in defendant's sixth amendment right to the effective assistance of counsel at trial. We evaluate ineffective-assistance claims using the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). *Strickland* requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Here, to establish that trial counsel's failure to request a lesser included offense instruction was prejudicial within the meaning of *Strickland*, defendant obviously would have to establish that he was entitled to the instruction.

¶ 33    Courts use the "charging-instrument" approach to determine whether an uncharged offense is a lesser included offense of a charged offense. *People v. Zarbock*, 2022 IL App (2d) 210238, ¶ 42. "Under the charging-instrument approach, a court looks to the charging instrument to see whether the description of the greater offense contains a broad foundation or main outline of the lesser offense." (Internal quotation marks omitted.) *Id.* If it does, the defendant is entitled to an instruction on the lesser offense if "the evidence adduced at trial rationally supports a conviction on the lesser-included offense and an acquittal on the greater offense." *People v. Kolton*, 219 Ill. 2d 353, 360 (2006). Although defendant claims that theft is a lesser included offense of armed robbery, he does not offer an analysis of the charging instrument to determine whether it contains a broad foundation or main outline of the offense of theft. Instead, he relies on case law applying

the test developed in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether one offense was a lesser included offense of another such that, under double jeopardy principles, conviction of the former offense would bar a prosecution for the latter. See *People v. Eggerman*, 292 Ill. App. 3d 644, 647 (1997). The *Blockburger* test focuses on the statutory definitions of the offenses, not on the facts alleged in the charging instrument. *Id.* at 647. Accordingly, defendant has neither argued nor established that he would have been entitled to a lesser included offense instruction.

¶ 34    More importantly, even if defendant were entitled to a lesser included offense instruction on theft, trial counsel's failure to request the instruction would not be prejudicial within the meaning of *Strickland* unless there is a reasonable probability that defendant would have been found guilty of theft and acquitted of armed robbery. See *People v. Rouse*, 2020 IL App (1st) 170491, ¶ 50 ("[T]aking as true defendant's allegation that he would have elected to have the jury instructed on attempt had he been informed that the sentences for attempted [aggravated criminal sexual assault] could have been concurrent, *** we cannot say that there was a reasonable probability that the result of the proceeding would have been different had that instruction been given.") Although defendant insists that "it is *possible* that with a lesser-included instruction offered the result might have been different" (emphasis added), a mere "possibility" is not a reasonable probability.

¶ 35                        III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 37    Affirmed.

*People v. Hunt*, **2023 IL App (2d) 220153**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 13-CF-898; the Hon. Marcy L. Buick, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Drew A. Wallenstein, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Victoria E. Jozef, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |